STATE, APPELLANT, *v.* LIVINGSTON CONCRETE BUILDING AND MANUFACTURING COMPANY, RESPONDENT.

(No. 2,353.)

(Submitted November 14, 1906. Decided December 13, 1906.)

*"Eight-hour Law"—Constitution—Statutory Construction—Master and Servant—Freedom of Contract—Equal Protection of the Laws.*

Penal Statutes—Indefiniteness—Construction—Legislative Intent.
1. A statute, though penal in character, will not be held invalid because of the indefinite language in which it is couched, if the purpose or intent which the legislature had in mind in enacting it can be ascertained.

Statutes—Eight-hour Law—Intent of Legislature.
2. By Chapter 50 of the Laws of 1905, providing that eight hours shall constitute a day's labor on all public works, in mills and smelters for the treatment of ores and in underground mines, it is not intended to impose punishment upon laborers in any of the designated employments who do not work for a full period of eight hours in every working day, but its object is to prevent them from working continuously for a term longer than eight hours.

Same—Eight-hour Law—Inhibition Applicable to Employer and Employee.
3. Chapter 50, page 105, of the Laws of 1905, making eight hours a day's work on certain employments, and providing that "every per-

son, corporation, stock company or association of persons'' violating the statute shall be guilty of a misdemeanor, is not open to the objection that it cannot be determined therefrom whether it is intended to punish the employer, employee or both for an infraction of its provisions; it includes within its inhibition both employer and employee, and the former may be punished for causing his employee to work for a longer period, and the latter for working continuously for a term exceeding eight hours.

Same—Eight-hour Law—Arbitrary Legislation.

4. The purpose of the legislation contained in Chapter 50, page 105 of the Laws of 1905, being to conserve the health and promote the happiness of workingmen engaged on public works, in underground mines, and in mills and smelters for the reduction of ores, the criticism that it is harsh and arbitrary in that it prevents the employee from working more than eight hours, even if working by the hour, is not meritorious.

Same—Eight-hour Law—Emergency Cases—Review of Legislative Policy.

5. The fact that the legislature, in enacting Chapter 50, page 105, Laws of 1905, known as the ''eight-hour law,'' did not make provision for cases of emergency where life or property is in danger, is not a valid objection to it, this consideration being one of legislative policy, which courts will not review except where it appears that in its operation the Act in question would be so unreasonable that it could not be supposed that the legislature intended it to have the effect which would be brought about by its enforcement.

Eight-hour Law—May Servant Prolong Labor in Emergency Cases?

6. *Quaere:* May an employee prolong his labor beyond the eight-hour period prescribed by Chapter 50, page 105, Laws of 1905, where a sudden emergency arises whereby life or property is placed in imminent danger, without violating the spirit of the statute?

Statutory Construction—Eight-hour Law—Constitutional Amendments—Regularity of Adoption—Review.

7. In construing Chapter 50, page 105, Laws of 1905, enacting the ''eight-hour law,'' the question whether the amendment to the state Constitution relative to the subject, adopted by popular vote at the election of 1904, had been properly submitted, is immaterial, since the validity of the statute must be determined with reference to the Fourteenth Amendment to the federal Constitution, irrespective of whether or not the amendment to the state Constitution authorizes its enactment.

Eight-hour Law—Right to Perform Labor for State—Freedom to Contract.

8. One who contracted with a city to lay a concrete sidewalk, and who was informed against and convicted for a violation of the provisions of Chapter 50, page 105, of the Laws of 1905, prescribing that eight hours should constitute a day's labor on all public works, cannot complain that the statute abridges his freedom to contract, since no one is entitled, as a matter of absolute right, to perform labor for the state or any of its subdivisions, and it is within the power of the state to prescribe under what conditions work may be performed for it or its municipalities.

Same—Constitution—Equal Protection of Laws.

9. The ''eight-hour law'' (Chapter 50, Laws of 1905, page 105) is not obnoxious to the constitutional provision, guaranteeing to all the equal protection of the laws, because the rule of conduct therein prescribed applies alike to all who contract to do work for the state or any of its subdivisions, and alike to all employed to perform labor on such work.

Same—Public Works—Governmental Control.
10. One convicted of a violation of the provisions of Chapter 50, Laws of 1905, page 105, for causing his employees to work for more than eight hours a day laying a concrete sidewalk for a city, may not complain that daily labor at such employment for a period longer than eight hours was not injurious to the laborer, since the state, through its municipal agent—the city—had full control of the work and could prescribe such conditions relative to the manner in which it should be done as it saw fit to impose; and this is not the exercise of police power, but the exercise of governmental control over the state's own work.

Same—Mines—Smelters and Mills—Police Power—Constitution.
11. Held that the provisions of Chapter 50, Laws of 1905, page 105, limiting the hours of labor of employees in underground mines and in mills and smelters for the reduction of ores to eight hours a day, constitute a valid exercise of the police power of the state and are not obnoxious to constitutional provisions.

Eight-hour Law—Private Contracts—State may not Interfere.
12. The right of persons engaged in private business to enter into contracts for labor with relation to such business is protected by the Fourteenth Amendment to the federal Constitution, and the state may not interfere.

*Appeal from District Court, Park County; Frank Henry, Judge.*

THE LIVINGSTON CONCRETE BUILDING AND MANUFACTURING COMPANY was charged with violating the provisions of the eight-hour law. From a judgment sustaining defendant's demurrer to the information, the state appeals. Reversed and remanded.

*Mr. Dan Yancey,* for Respondent.

The provision of the statute in question, relative to work carried on by contractors for municipalities, is in direct conflict with the Fourteenth Amendment to the Constitution of the United States, which prohibits any state from depriving a person of liberty or property without due process of law, as well as in conflict with our own Constitution. The right to purchase or sell labor is part of the liberty protected by said amendment. (*Ex parte Kuback*, 85 Cal. 274, 20 Am. St. Rep. 226, 24 Pac. 737, 9 L. R. A. 483; *Seattle* v. *Smyth et al.*, 22 Wash. 327, 79 Am. St. Rep. 939, 60 Pac. 1120.) The privilege of contracting is also a property right intended to be protected by the United

States Constitution. (*Ritchie* v. *People,* 155 Ill. 98, 46 Am. St. Rep. 315, 40 N. E. 454, 29 L. R. A. 82.)

It is an essential incident to the acquisition of property, and is such right as the legislature may not arbitrarily and without sufficient cause either abridge or take away. The number of hours' labor that shall be performed is an important factor, and constitutes an essential part of every contract of service and to deny the contracting parties the right to fix the hours is beyond the power of the legislature. (*Cleveland* v. *Clements Bros. etc. Co.,* 67 Ohio St. 197, 93 Am. St. Rep. 670, 65 N. E. 885, 59 L. R. A. 775; *People* v. *Coler,* 166 N. Y. 1, 82 Am. St. Rep. 605, 59 N. E. 716, 52 L. R. A. 814.)

All the late decisions hold contrary to the doctrine that the statute is a mere direction by the sovereign authority to one of its own agencies (the city) to contract in a particular way. The construction of sidewalks is a purely local affair with which the state legislature has no concern. (*Cleveland* v. *Clements Bros. etc. Co., supra; People* v. *Coler, supra.*)

Neither the police power nor the Constitution of the United States or of this state will sanction any part or parcel of this Act. It is of that class of legislation called paternal, and a vicious attempt to put the laboring man under insulting tutelage and at the same time prevent his employer from exercising his liberty and property rights. (*In re Morgan,* 26 Colo. 415, 77 Am. St. Rep. 269, 58 Pac. 1071, 47 L. R. A. 52; *Lochner* v. *New York,* 198 U. S. 45, 25 Sup. Ct. 539, 49 L. Ed. 937; Tiedeman on Limitations of Police Power, secs. 86, 178; Cooley's Constitutional Limitations, 5th ed., p. 486; *People* v. *Coler,* 168 N. Y. 1, 82 Am. St. Rep. 605, 59 N. E. 716, 52 L. R. A. 814; *Ritchie* v. *People,* 155 Ill. 98, 46 Am. St. Rep. 315, 40 N. E. 454, 29 L. R. A. 79.)

The states of California, Colorado and Washington have each decided adversely to the constitutionality of such statutes. (*Ex parte Kuback,* 85 Cal. 274, 20 Am. St. Rep. 226, 24 Pac. 737, 9 L. R. A. 483; *In re Morgan,* 26 Colo. 415, 77 Am. St. Rep.

269, 58 Pac. 1071, 47 L. R. A. 52; *Seattle* v. *Smyth,* 22 Wash. 327, 79 Am. St. Rep. 939, 60 Pac. 1120.)

*Mr. Albert J. Galen,* Attorney General, *Mr. E. M. Hall,* Assistant Attorney General, and *Mr. T. J. Walsh,* for Appellant.

MR. JUSTICE HOLLOWAY delivered the opinion of the court.

The Livingston Concrete Building and Manufacturing Company, a domestic corporation, was charged, by an information filed in the district court of Park county, with violating the provisions of Chapter 50, page 105, Laws of 1905, known as the "Eight-hour Law," in this: That the defendant, having a contract with the city of Livingston for the construction of certain cement sidewalks, crosswalks, and curbs, did unlawfully and willfully cause, suffer, and permit its servants and employees engaged in such work to work for a longer period than eight hours in a day. To this information the defendant interposed a general demurrer, which was sustained. The state appeals from the judgment for the defendant on the demurrer to the information.

The information states facts sufficient to constitute a public offense, if Chapter 50 above is a valid legislative enactment capable of being enforced; but on behalf of respondent it is urged (1) that the Act is so indefinite as to be incapable of enforcement, and (2) that, even if sufficiently definite, the Act is unconstitutional and void.

The provisions of Chapter 50, above, are as follows:

"Section 1. A period of eight (8) hours shall constitute a day's work on all works or undertakings carried on or aided by any municipal, county or state government, and on all contracts let by them, and in mills and smelters for the treatment of ores, and in underground mines.

"Sec. 2. Every person, corporation, stock company or association of persons who violate any of the provisions of section one (1) of this Act shall be guilty of a misdemeanor, and upon

conviction thereof shall be punished by fine of not less than one hundred dollars ($100) nor more than five hundred ($500) dollars or by imprisonment in the county jail for not less than thirty days nor more than six months, or by both such fine and imprisonment.''

1. It is said that the statute is too indefinite to be enforceable, in that (1) it cannot be determined whether it intends to impose the penalty prescribed upon the man who works less than eight hours in a day, or upon the man who works more than eight hours in a day, or upon both; (2) it cannot be determined whether it is intended to punish the employer, the employee, or both; and (3) it is so indefinite that, in fact, it cannot be said to forbid the employment of a laborer for more than eight hours in a day.

While it may be conceded that the intention of the lawmakers might have been expressed in plainer terms, we cannot hold a solemn legislative enactment of no force or effect because of the indefinite language in which it is couched, unless we find ourselves unable to divine the purpose or intent of the legislature. (Hochheimer on Criminal Law, 2d ed., sec. 28.) For, after all, the function of the court is to determine and make known, if possible, such purpose or intent; for the intention of the legislature is the essence of the law. In *Edwards* v. *Morton,* 92 Tex. 152, 46 S. W. 792, it is said: ''The intention of the legislature in enacting a law is the law itself, and must be enforced when ascertained.'' In *Manhattan Co.* v. *Kaldenberg,* 165 N. Y. 1, 58 N. E. 790, it is said: ''In construing statutes the proper course is to start out and follow the true intent of the legislature, and to adopt that sense which harmonizes best with the context, and promotes in the fullest manner the apparent policy and objects of the legislature.'' (2 Lewis' Sutherland on Statutory Construction, 2d ed., sec. 363.)

It is an elementary rule that effect must be given to a statute, if possible. If the statute is plain and unambiguous, so that no doubt can arise from the language employed as to its scope and meaning, then there is not any room for interpretation or

construction, and the reading of the statute itself is a sufficient declaration of its meaning. ''When the meaning of a statute is doubtful, the reason and purpose of its enactment are to be taken into consideration in construing it and determining the intention of the legislature. In other words, though a penal statute cannot be extended by construction, it should, if possible, receive such a construction as, when practically applied, will tend to suppress the evil which the legislature intended to prohibit.'' (Clark & Marshall on the Law of Crimes, p. 97; 2 Lewis' Sutherland on Statutory Construction, 2d ed., secs. 528, 530.)

(1.) The history of labor legislation makes clear the evil to suppress which such statutes are enacted. It is the continuous employment of workingmen for such length of time as to imperil their lives or health that is sought to be avoided, and, in the interest of the general welfare of its citizens, the state undertakes to correct the evil as far as it may; or it may have been the purpose of the state to stamp with its approval the view now entertained by many, that, all things considered, the general welfare of workingmen, upon whom rests a portion of the burdens of government, will be best subserved if labor performed for eight hours continuously be taken as the measure of a full day's work; that the restriction of a day's work to that number of hours will so far promote the morality and improve the physical and intellectual condition of workingmen as to enable them the better to discharge the duties of citizenship.

With these objects in view, it cannot be supposed that the legislature intended to impose punishment upon every laborer engaged in any of the designated employments who fails to work for the full period of eight hours in every working day. But, on the other hand, it is apparent that the object and purpose in view were to prevent the employment of a laborer in any of such employments for more than eight hours in a day, that number of hours of continuous labor being fixed by the statute as the maximum for a day's work.

(2.) As it is the purpose of the statute to conserve the health and promote the happiness of the workingman—not to curtail his capacity to earn money or to set bounds upon the greed of his employer—the statute is written in terms broad enough to include within its inhibition both the employer and the employee. The language is: "Every person, corporation, stock company or association of persons who violates any of the provisions of section one of this Act shall be guilty of a misdemeanor," etc.

In *Short* v. *Bullion-Beck etc. Co.*, 20 Utah, 20, 57 Pac. 720, 45 L. R. A. 603, a similar statute of the state of Utah was considered, and it was there held that the statute applies both to the employer and employee, and that the protection which the state throws around the citizen by the enactment of such a law cannot be waived even by the employee, the person for whose benefit the statute is primarily enacted. We do not think that in this respect the statute is at all indefinite, but, on the contrary, the meaning of the language employed seems to be plain.

(3.) It is said that the statute does not in terms prohibit the workingman from engaging in any of the designated employments for more than eight hours in a day, nor does it specifically prohibit the employer from hiring him to do so, and that, in fact, at most, the statute does not do more than define a working day. But the courts have not had difficulty in reaching an altogether different conclusion. The statute of Utah considered in *Short* v. *Bullion-Beck etc. Co.*, above, provides in section 1 (Session Laws, 1896, p. 219, Chap. 72) that the period of employment of workingmen in underground mines shall be eight hours per day. In section 2 the same language is employed with respect to mills and smelters for the treatment of ores. Section 3 provides: "Any person, body corporate, agent, manager or employer who shall violate any of the provisions of sections 1 and 2 of this Act shall be deemed guilty of a misdemeanor," etc. Respecting this statute, the court said: "When the plaintiff [employee] voluntarily performed services at the request of the defendant [employer] in the mill, and

worked twelve hours, instead of eight hours, there was a violation of the statute. * * * When the defendant [employer] requested the plaintiff to work twelve hours each day, and plaintiff complied with that request, the law was violated by the act of each party.''

In *State* v. *Whitaker,* 160 Mo. 59, 60 S. W. 1068, the supreme court of Missouri had under consideration a statute which requires that every electric street-car, other than trail cars which are attached to motor cars, shall be provided during certain months of each year with a suitable screen which shall fully and completely protect the driver, motorman, gripman, or other person guiding or directing the car from wind and storm. The penalty clause is as follows: ''Any person, agent or officer of any association or corporation violating any of the provisions of this Act shall be deemed guilty of a misdemeanor,'' etc. The court held that this statute is not so indefinite or uncertain in its meaning as to be inoperative, but that it imposes upon every company or association of persons operating electric cars the duty of providing the screens on their cars, and makes subject to the penalty prescribed any person who, owning or operating such cars, operates them without screens during the designated months of the year.

The declared purpose of our statute is to impose a penalty upon everyone who violates the provisions of section 1 of the Act. And how may those provisions be violated? Manifestly in no other way than by the employee working more than eight hours in a day in any of the designated employments, or by the employer causing him to do so. The information in this case charges that the defendant company did unlawfully and willfully cause, suffer, and permit its servants to work for a longer period than eight hours in a day, and, if this be true, there was a clear violation of the statute by the defendant company; and it was no less a crime that its servants might also be equally guilty of the same offense.

In this connection it is said that the statute is exceedingly harsh and arbitrary, in that it limits the number of hours of

labor, even though the employee is working by the hour and paid according to the number of hours he works. But, when the purpose of the law is kept in mind, we think this criticism cannot be made. The object of the law is to conserve the health and promote the happiness of the workingmen by such reasonable regulations as will save them in the one instance from overwork, and, in the other, afford them ample time for rest, recreation, and their physical and mental improvement; and therefore it is quite immaterial whether the labor is performed by the day or by the hour. Its object is to limit the number of hours of labor in a day so far as the state may do so. The same criticism might be made of many other public statutes. Every law is a restraint upon some one, and the question of its harshness is only a relative one, depending largely upon the disposition of the person restrained, or the character of the business in which he is engaged.

It is further urged that the statute is harsh, in that no provision is made for cases of emergency where life or property is in peril; and it may be conceded that the Act would be more consonant with our ideas of a reasonable regulation if provisions had been made for such emergencies. But neither of these criticisms affects the validity of the Act. If it was the legislative will that no exception be made to the rule announced, the courts cannot say that a different policy should have been pursued. In fact, these objections only raise the question of legislative policy, with which the courts have nothing to do, unless it should be made to appear that in its operation the Act would be so unreasonable that it could not be supposed that the legislature ever intended it to have such effect. (20 Ency. of Law, 2d ed., 599.) Whether this statute in its operation will in fact prove to be harsh can only be determined by experience, and a probability that it will do so is not sufficient to condemn the Act in advance.

We are not called upon in this connection to decide whether or not, in the event a workingman had practically completed his eight hours of work upon one of the designated employ-

ments, and some emergency should suddenly arise whereby life or property was placed in imminent danger, such employee might not prolong his labor beyond the allotted time without violating the spirit of this statute. That question is not presented in this case, and it is therefore not considered nor decided.

2. In prefacing his brief, counsel for respondent insists that the amendment to the Constitution of Montana, prescribing the hours of labor in works or undertakings carried on or aided by any municipal, county, or the state government, and on contracts let by them, and in mills and smelters for the treatment of ores and in underground mines, approved by popular vote at the general election of 1904, was not properly submitted to the people, and therefore was not properly adopted. And while we do not agree with counsel in this contention, we do say that it is entirely immaterial whether we have such amendment in effect or not; for this question involves the construction of our statute with reference to the Fourteenth Amendment to the Constitution of the United States, and if our statute violates such Fourteenth Amendment, it would not aid it if we had a constitutional provision authorizing it, for in that event our constitutional provision would have to give way to the paramount authority of the Constitution of the United States.

But inquiry as to the constitutionality of this statute ought to be deemed foreclosed, for every feature of it has been before the supreme court of the United States and passed upon by that tribunal. Treated from a purely technical standpoint, the statute embraces two classes of employees: (1) Those engaged in works and undertakings carried on or aided by any municipal, county, or the state government, or on contracts let by them; and (2) those engaged in mills or smelters for the treatment of ores, or in underground mines. A case involving a statute applying to an employee of the first class arose in Kansas, where they have a statute similar to our own so far as applicable to that class of employees and in so far as it raises the question now under consideration. One Atkin had a con-

tract with Kansas City, Kansas, to provide the labor and ma-
terials and construct a brick pavement upon Quindaro Boule-
vard, a public street of that city, and, as such contractor, re-
quired one of his employees to work for ten hours per day in
prosecuting such work. Atkin was charged with violating the
Kansas eight-hour law, was convicted, the judgment affirmed
by the supreme court of Kansas (*State* v. *Atkin,* 64 Kan. 174,
97 Am. St. Rep. 343, 67 Pac. 519), and by writ of error the case
was taken to the supreme court of the United States, where
every objection to the constitutionality of the Kansas statute was
urged which is urged against our statute here.

Counsel for plaintiff in error in the *Atkin Case* argued: (1)
That the statute of Kansas abridges the privileges of a citizen
of the United States, and curtails his liberty with respect to his
right to contract with the state or any of its subdivisions; (2)
that the construction of the sidewalk in controversy was purely
a local affair, with which the state has no concern; (3) that the
statute denied to Atkin the equal protection of the laws; and
(4) that it was conceded that the work was not dangerous to
life, limb, or health, and that daily labor on it for ten hours
would not be injurious to the laborer in any way, and therefore
the statute could not be upheld as a police regulation. With
respect to the first of these contentions the court said: ''If it
be contended to be the right of every one to dispose of his labor
upon such terms as he deems best—as undoubtedly it is—and
that to make it a criminal offense for a contractor for public
work to permit or require his employee to perform labor upon
that work in excess of eight hours each day, is in derogation of the
liberty both of employees and employer, it is sufficient to answer
that no employee is entitled, of absolute right and as a part of
his liberty, to perform labor for the state; and no contractor
for public work can excuse a violation of his agreement with
the state by doing that which the statute under which he pro-
ceeds distinctly and lawfully forbids him to do.''

Counsel for respondent in this case cites *Cleveland* v. *Clements
Bros. Construction Co.,* 67 Ohio St. 197, 93 Am. St. Rep. 670,

65 N. E. 885, 59 L. R. A. 775, and *People ex rel. Rodgers* v. *Coler,* 166 N. Y. 1, 82 Am. St. Rep. 605, 59 N. E. 716, 52 L. R. A. 814, in support of the second contention above, which is also urged here.   But these cases and several others were cited by counsel for plaintiff in error in the Atkin Case upon the same question, but without avail, and respecting that second contention the court said: "Such corporations are the creatures, mere political subdivisions, of the state for the purpose of exercising a part of its powers.   They may exert only such powers as are expressly granted to them, or such as may be necessarily implied from those granted.   What they lawfully do of a public character is done under the sanction of the state.   They are in every essential sense only auxiliaries of the state for the purposes of local government.   *   *   *   The improvement of the boulevard in question was a work of which the state, if it had deemed it proper to do, could have taken immediate charge by its own agents; for it is one of the functions of government to provide public highways for the convenience and comfort of the people.   Instead of undertaking that work directly, the state invested one of its governmental agencies with power to care for it.   Whether done by the state directly or by one of its instrumentalities the work was of a public, not private character." (*In re O'Brien,* 29 Mont. 530, 75 Pac. 196; *Wilcox* v. *Deer Lodge,* 2 Mont. 574.)   The supreme court further said: "Equally without any foundation upon which to rest is the proposition that the Kansas statute denied to the defendant or to his employee the equal protection of the laws.   The rule of conduct prescribed by it applies alike to all who contract to do work on behalf either of the state or of its municipal subdivisions, and alike to all employed to perform labor on such work."

With respect to the fourth contention the court said: "Some stress is laid on the fact, stipulated by the parties for the purposes of this case that the work performed by defendant's employee is not dangerous to life, limb, or health, and that daily labor on it for ten hours would not be injurious to him in any way.   In the view we take of this case, such considerations are

not controlling. We rest our decision upon the broad ground that the work being of a public character, absolutely under the control of the state and its municipal agents acting by its authority, it is for the state to prescribe the conditions under which it will permit work of that kind to be done. Its action touching such a matter is final so long as it does not by its regulations infringe the personal rights of others; and that has not been done." The court disposed of the controversy by saying that the statute of Kansas is not inconsistent with the Constitution of the United States, and that, "indeed, its constitutionality is beyond all question." (*Atkin* v. *Kansas,* 191 U. S. 207, 24 Sup. Ct. 124, 48 L. Ed. 148.) The decision in the *Atkin Case* is conclusive upon this court and decisive of the question presented here.

So far as the statute affects the other class—that is, workingmen employed in mills and smelters for the treatment of ores and in underground mines—its constitutionality is settled beyond controversy. (*Holden* v. *Hardy,* 169 U. S. 366, 18 Sup. Ct. 383, 42 L. Ed. 780; *Cantwell* v. *Missouri,* 199 U. S. 602, 26 Sup. Ct. 749, 50 L. Ed. 329.)

Finally, counsel for respondent says: "If the legislature has the power to deprive cities and their contractors of the right to agree with their workingmen upon the hours of labor or compensation, it has the same right and power to legislate in respect to private persons." But that this contention is erroneous must be deemed settled. In *Lochner* v. *New York,* 198 U. S. 45, 25 Sup. Ct. 539, 49 L. Ed. 937, the supreme court of the United States declared the general rule to be that the right of persons engaged in private business to make contracts in relation to such business is a part of the liberty of such persons, and is protected by the Fourteenth Amendment to the Constitution of the United States, and that this right includes the right to contract for labor, except where controlled by the state in the exercise of its police power.

So that the three cases—*Holden* v. *Hardy, Atkin* v. *Kansas,* and *Lochner* v. *New York*—seem to cover almost every possible

feature of labor legislation, except that relating to the employment of women or children, and they determine once for all (1) that with respect to work carried on or aided by any municipal, county, or state government, or on contracts let by them, or in private work of such character as to imperil the health or lives of the workingmen, as for instance, work in mills and smelters for the treatment of ores, and in underground mines, the state may prescribe reasonable rules regulating the hours of labor and the conditions under which such work shall be done; (2) with respect to contracts relating to other classes of private work (except where women or children are employed) the state may not interfere.

In the judgment of this court Chapter 50, page 105, Laws of 1905, is a valid legislative enactment, capable of being enforced. Under this view of the case, we are of the opinion that the information states a public offense.

The judgment of the district court is reversed, and the cause is remanded, with direction to vacate the judgment rendered and the order made allowing the demurrer, and to overrule the demurrer to the information.

*Reversed and remanded.*

MR. CHIEF JUSTICE BRANTLY and MR. JUSTICE MILBURN concur.