HERSEY, RESPONDENT, *v.* NEILSON ET AL., APPELLANTS.

(No. 3,288.)

(Submitted February 18, 1913.  Decided March 19, 1913.)

[131 Pac. 30.]

*Counties—Not Municipal Corporations—Printing Contracts— Statute—Constitutionality—Indirect Taxation—Local or Special Laws—Regulation of Interstate Commerce—Due Process of Law.*

Counties—Not Municipal Corporations.
　　1.  *Held,* that only incorporated cities and towns are municipal corporations in this state, and that therefore counties may not be classed as such.

Same—Definition—Legislative Control.
　　2.  A county is a political subdivision of the state for governmental purposes; as such they are subject to legislative power, except in so far as it is restricted by the Constitution in express terms or by necessary implication.

Same—Printing Contracts—Limit of Powers.
　　3.  Under section 2870, Revised Codes, a county has only such powers as are expressly conferred by law or necessarily implied from those expressed; hence a board of commissioners—its executive body—whose authority to let a public printing contract is questioned, must justify its action by reference to the provisions of law defining and limiting its powers in this respect.

Same—Printing Contracts—Manner of Letting.
　　4.  The manner in which county printing contracts shall be let is one of legislative or governmental policy, with which courts may not interfere.

Same—Constitutionality of Statute—Due Process of Law.
　　5.  *Held,* that section 2897, Revised Codes, providing that county printing must be done within the state, is not repugnant to either the

Fifth or Fourteenth Amendment to the Constitution of the United States, relative to deprivation of property without due process of law, or to section 3, Article III, Montana Constitution, having to do with the inalienable right of acquiring property.

Same—Statutes—Constitutionality—Record.

6. In the absence of a showing that in its operation section 2897, Revised Codes, imposes upon the taxpayers a burden greater than they would have to bear if outside competition were permitted, and thus indirectly operates as a tax upon the inhabitants of counties, contrary to section 4, Article XII, of the Constitution, its constitutionality in that regard will not be determined.

Same—Statute—Local or Special Laws—Constitution.

7. Since section 2897, Revised Codes, requiring county printing to be done within the state, applies to all counties and to all county printing contracts, it is neither a local nor a special statute, and therefore does not do violence to section 26, Article V, of the state Constitution prohibiting the enactment of either.

Same—Constitution—Regulation of Interstate Commerce.

8. Section 2897, Revised Codes, making it incumbent upon counties to have their public printing done within the state, *held,* not a regulation of interstate commerce contrary to the clause in section 8 of Article I of the federal Constitution.

*Appeal from District Court, Hill County; J. E. Erickson, Judge of the Eleventh Judicial District, presiding.*

ACTION by P. H. Hersey against Ever Neilson and others, county commissioners, and J. A. Rose, county treasurer, of Hill county, Montana. Judgment for plaintiff and defendants appeal. Affirmed.

*Messrs. Gunn, Rasch & Hall,* and *Messrs. W. W. Patterson, H. S. Kline,* and *Victor R. Griggs,* for Appellants, submitted a brief; *Mr. M. S. Gunn* argued the cause orally.

It is our contention that a county is a municipal corporation, having governmental and proprietary functions; that as to the former, the state's control is supreme, but as to the latter, the state's control is no more extensive than it is over private corporations; that county printing is a matter solely of local concern, and comes within the proprietary functions of a county, and that section 2897 is an unconstitutional restriction upon the power of a county to contract as to its local affairs, and void. In *Independent Pub. Co.* v. *Lewis and Clark,* 30 Mont. 83, 75 Pac. 860, this court said: "It [the county] is *quasi* corporate in character * * * "; and in *State* v. *Coad,* 23 Mont. 131, 57

Pac. 1092, it was held that as a county derives its powers from the same source as a municipal corporation, it comes within the rules and principles of law applicable to such corporation. (See, also, *State* v. *Varney Electrical Supply Co.,* 160 Ind. 338, 98 Am. St. Rep. 325, 61 L. R. A. 154, 66 N. E. 895; *People* v. *Hurlbut,* 24 Mich. 87.) Furthermore, section 30 of Article III of our state Constitution provides: "The enumeration in this Constitution of certain rights, shall not be construed to deny, impair or disparage others retained by the people." (See, also, 1 Dillon ·on Municipal Corporations, 5th ed., sec. 109; *Hunter* v. *Pittsburg,* 207 U. S. 161, 52 L. Ed. 151, 28 Sup. Ct. Rep. 40; *State* v. *Barker,* 116 Idaho, 96, 93 Am. St. Rep. 222, 57 L. R. A. 244, 89 N. W. 204.)

County printing is a private, and not a governmental, function. If the establishment, maintenance and control of a waterworks, gas plant and fire department are matters of local concern to towns and cities, over which the state has no control, as held in the cases *infra,* it must follow that county printing is a matter of local concern to a county and its taxpayers, and that the county's control over it cannot be interfered with by the state. (*Helena Cons. Water Co.* v. *Steele,* 20 Mont. 1, 37 L. R. A. 412, 49 Pac. 382; *People* v. *Common Council of Detroit,* 28 Mich. 228, 15 Am. Rep. 206; *Davidson* v. *Hine,* 151 Mich. 294, 123 Am. St. Rep. 267, 14 Ann. Cas. 352, 15 L. R. A., n. s., 575, 115 N. W. 246; *City of South Pasadena* v. *Pasadena County etc. Co.,* 152 Cal. 579, 93 Pac. 490; *State* v. *Moores,* 55 Neb. 480, 41 L. R. A. 624, 76 N. W. 175.)

The statute violates the Fifth and Fourteenth Amendments to the Constitution of the United States, and section 3 of Article III of the Constitution of the state·of Montana (*Van Harlingen* v. *Doyle,* 134 Cal. 53, 54 L. R. A. 771, 66 Pac. 44; *People* v. *Coler,* 166 N. Y. 1, 82 Am. St. Rep. 605, 52 L. R. A. 814, 59 N. E. 716; *Adams* v. *Brenan,* 177 Ill. 194, 96 Am. St. Rep. 222, 42 L. R. A. 718, 52 N. E. 314; *Marshall & Bruce Co.* v. *Nashville,* 109 Tenn. 495, 71 S. W. 815) ; for it is well settled that the right to contract is property within the meaning of the Fourteenth

Amendment (*Allgeyer* v. *Louisiana,* 165 U. S. 578, 41 L. Ed. 832, 17 Sup. Ct. Rep. 427, and *Butchers' etc. Co.* v. *Crescent City etc. Co.,* 111 U. S. 746, 28 L. Ed. 585, 4 Sup. Ct. Rep. 652), and a county comes within the protection of the above provisions of these constitutions. (*Dartmouth College* v. *Woodward,* 4 Wheat. (U. S.) 694, 4 L. Ed. 629; *Ex parte Case,* 20 Idaho, 128, 116 Pac. 1037; *Street* v. *Varney Electrical Supply Co., supra.*)

The provision of section 2897 we are attacking increases the cost of printing to counties, in that the newspapers to which the contracts are awarded are permitted to sublet them only to newspapers or printing establishments within the state, and outside competition is thereby eliminated, and it is manifest, therefore, that it results in taking a portion of the money paid by the taxpayers of Hill county for county printing which might be saved, and is, in effect, taxing the county inhabitants, and as a legislature cannot do indirectly what it cannot do directly, the law is in flagrant violation of section 4 of Article XII of the state Constitution. (*People* v. *Coler, supra; Marshal & Bruce Co.* v. *Nashville,* 109 Tenn. 495, 71 S. W. 815; *State* v. *Eldredge,* 27 Utah, 477, 76 Pac. 337.)

If the legislature has power to require counties to stipulate in their contracts for printing that the contracts shall be sublet only to newspapers or printing establishments within the state, then, by a parity of reasoning, the legislature has power to restrict counties in getting any of their supplies to such classes as it may please the whim of the legislature to create. If there is any reason underlying this law, the law should apply to all contracts let by counties. The law, as it stands, is special and not uniform in operation, and therefore violative of section 26, Article V, of the state Constitution. (See *Van Harlingen* v. *Doyle,* 134 Cal. 53, 54 L. R. A. 771, 66 Pac. 44; *Eden* v. *People,* 161 Ill. 296, 52 Am. St. Rep. 365, 32 L. R. A. 659, 43 N. E. 1108; *State* v. *Trenton,* 54 N. J. L. 444, 24 Atl. 478; *State* v. *Gantz,* 124 La. 535, 24 L. R. A., n. s., 1072, 50 South. 524; *Davies* v. *Board of Supervisors,* 89 Mich. 295, 50 N. W. 862; *Stratman* v.

*Commonwealth,* 137 Ky. 500, 136 Am. St. Rep. 299, 27 L. R. A., n. s., 949, 125 S. W. 1094.)

The provision of section 2897, in preventing counties from having their printing done and their printing supplies furnished by concerns outside of the state, interferes with interstate commerce. (*People ex rel. Treat* v. *Coler,* 166 N. Y. 144, 59 N. E. 776; *People* v. *Buffalo Fish Co.,* 164 N. Y. 93, 79 Am. St. Rep. 622, 52 L. R. A. 803, 58 N. E. 34.) The law is, therefore, in violation of section 8 of Article I of the Constitution of the United States, which provides: "Congress shall have power * * * to regulate commerce among the several states."

*Mr. C. A. Spaulding* submitted a brief and argued the cause orally in behalf of Respondent.

The argument of counsel for appellants is premised upon the erroneous assumption that counties are municipal corporations, and as such fall within the rule announced by many authorities that in some matters of local self-government they are independent of state control. But counties in Montana are mere political subdivisions of the state; in truth, they are political agencies of the state by means of which the policies of the state are more effectively carried out locally. They are not clothed with the right to make laws for local self-government, nor indeed to do aught except carry out the will of the state as expressed in the statutes creating them, which are the measure of their powers. Municipalities, on the contrary, are given authority to make laws to effectuate local self-government; and as to those matters regarding which such municipalities are given that authority, they act in a private and proprietary capacity, and hence stand in the same relation to the law as private corporations. This distinction between counties, which, at the most, are only *quasi* corporations, and cities which are municipal corporations proper, has been consistently adhered to, and pointed out in decisions of the courts not only of this jurisdiction, but in practically every other jurisdiction within the United States, and by the federal courts as well. (*State* v. *Coad,* 23 Mont. 131, 57 Pac.

1092; *Independent Pub. Co.* v. *Lewis and Clark County,* 30 Mont. 83, 75 Pac. 860; *Morse* v. *Granite County,* 44 Mont. 78, 119 Pac. 286; *People* v. *Sacramento County,* 45 Cal. 692; *People* v. *McFadden,* 81 Cal. 489, 15 Am. St. Rep. 66, 22 Pac. 851; *Yamhill County* v. *Foster,* 53 Or. 124, 99 Pac. 286; *Commissioners of Hamilton County* v. *Mighels,* 7 Ohio St. 109; *Board of Commrs. of Montezuma Co.* v. *Wheeler,* 39 Colo. 207, 89 Pac. 52; *Frantz* v. *Autry,* 18 Okl. 561, 91 Pac. 211; *Silver* v. *Board of Commrs. of Clay Co.,* 76 Kan. 228, 91 Pac. 55; *Rogers Locomotive Machine Works* v. *American Emigrant Co.,* 164 U. S. 559, 41 L. Ed. 552, 17 Sup. Ct. Rep. 188.)

As indicative of the complete control possessed by the state over counties as political subdivisions thereof, numerous adjudicated cases hold that even the revenues of a county are wholly and absolutely under legislative control (*McSurely* v. *McGrew,* 140 Iowa, 163, 132 Am. St. Rep. 248, 118 N. W. 415; *Raymond* v. *Hartford Fire Ins. Co.,* 196 Ill. 329, 63 N. E. 745), where the distinction between the authority possessed by a state over the revenues of a municipal corporation such as a city and those of a county is clearly indicated. (See, also, *Slutts* v. *Dana,* 138 Iowa, 244, 115 N. W. 1115; *Swartz* v. *Lake County Commrs.,* 158 Ind. 141, 63 N. E. 31.) The true rule being that announced by the foregoing authorities and it being well settled that counties are merely governmental agencies for carrying out the policies of the state, it is apparent that whatever policy the state declares, or whatever limitation it prescribes as a condition precedent to such agents carrying on its business, the agent is bound by and must conform to.

Appellants do not indicate in their brief wherein section 3, Article III, of the state Constitution relates to counties. It is true the courts have held that the word "persons," used in constitutional provisions, is comprehensive enough to include private corporations; but no court has ever held that the word "persons" so used is applicable to governmental agencies of the state such as counties. The same may be said regarding the Fifth and Fourteenth Amendments to the Constitution of the United

States. Those amendments relate only to "persons" as defined by the courts, and not to political subdivisions of the state such as counties.

Appellants further contend that said section 2897 violates section 4 of Article XII of the state Constitution, which prohibits the legislative assembly from levying taxes upon the inhabitants or property in any county, city or town, for county, town or municipal purposes. Merely providing that in any contract let for county printing the commissioners shall require any subletting to be to some establishment within the state is not levying a tax; it is prescribing the manner in which a county contract shall be sublet. It has no more to do with the levy of taxes than the analogous provision of the statute that the board must advertise and let its contracts for the care of the poor of the county to the lowest responsible bidder. All of the cases cited by appellants under this subdivision of their brief are not in point.

Again, it is contended that said section 2897 violates the provisions of section 26 of Article V of the state Constitution, which prohibits the passing of local or special laws in certain enumerated cases. The claim is made that section 2897 falls within the purview of this constitutional provision, in that it assumes to regulate county affairs. The answer to this is that even if it does regulate county affairs, it is a general and not a special law; and it is only "local or special laws" which fall within the inhibition of this section of the Constitution. Section 2897 is a statute applicable to all the counties of the state; it is uniform in its scope and operation, and is in no sense whatever a local or special law.

Counsel for appellants cite but two cases to sustain the contention that the statute violates the interstate commerce clause of the Constitution. One is the case of *People* v. *Buffalo Fish Co.,* 164 N. Y. 93, 79 Am. St. Rep. 622, 52 L. R. A. 803, 58 N. E. 34, holding that the state cannot lawfully prescribe that one "being possessed" of certain kinds of fish at a certain season of the year is guilty of a public offense, when, as a fact, such fish were shipped into the state from another jurisdiction. This

would seem to have very little to do with the principle under discussion. The second case is that of *People ex rel. Treat* v. *Coler,* 166 N. Y. 144, 59 N. E. 776, holding that a statute imposing upon a municipal corporation the restriction that it should purchase no dressed or carved stone unless the work done thereon was performed within the state is invalid. This latter case is easily distinguishable from the case at bar. There the restriction was sought to be imposed upon a municipal corporation, which, under well-established principles, stands in a relation to the law wholly different from that of a county, as the many authorities heretofore cited demonstrate. The only reason why section 2897 could be said to violate the interstate commerce clause of the federal Constitution is that it denies to citizens of other states the right to contract for county printing within this state. But the same question was raised in the case of *Atkin* v. *Kansas,* 191 U. S. 207, 48 L. Ed. 148, 24 Sup. Ct. Rep. 124, and answered adversely to plaintiff in that case. Nor is direct authority lacking that such a statute as section 2897 does not violate the interstate commerce clause. The right of the state to require the printing done for it or any of its municipal subdivisions to be done within the state cannot admit of doubt. It was expressly so ruled in the somewhat recent case of *In re Gemmill,* 20 Idaho, 732, Ann. Cas. 1913A, 76, 119 Pac. 298.

MR. JUSTICE HOLLOWAY delivered the opinion of the court.

On March 8, 1912, the board of county commissioners of Hill county, Montana, let a contract to B. B. Weldy, proprietor and publisher of the "Chester Signal," a newspaper which had been published in Hill county for more than six months prior thereto, to do the county printing, including the furnishing of blanks, blank books, *etc.* Thereafter Weldy sublet to the Shaw-Borden Company, of Spokane, Washington, the contract to furnish all blank record books, warrant books, certificate books, registers, and bound books of every description to be used by the county.

This action was commenced by a resident taxpayer to secure an injunction restraining the board of county commissioners from allowing the account of Weldy for supplies furnished through the Shaw-Borden Company, or from directing a county warrant to be issued to pay for such supplies, and to restrain the county treasurer from paying for such supplies. Upon the complaint a temporary injunction was issued. The defendants demurred to the complaint and moved to dissolve the injunction. The demurrer was overruled, and the motion to dissolve denied. Defendants thereupon stood upon their demurrer, suffered judgment to be entered against them, and have appealed.

It is insisted that section 2897 of the Revised Codes is unconstitutional, and this presents the only question for our determination. After providing for letting public printing contracts, that section of the Codes proceeds: "All newspapers which may receive any contract for printing under this Act which may not be able to execute any part of such contract shall be required to sublet such contract or portion of contract to some newspaper or printing establishment within the state, which may be competent to execute such work. * * * "

1. In their brief counsel for appellants attack the statute, and say: "It is our contention that a county is a municipal [1] corporation, having governmental and proprietary functions; that as to the former the state's control is supreme, but as to the latter the state's control is no more extensive than it is over private corporations; that county printing is a matter solely of local concern, and comes within the proprietary functions of a county, and that the above provision of section 2897 is an unconstitutional restriction upon the power of a county to contract as to its local affairs." If the statement, "a county is a municipal corporation, having governmental and proprietary functions," is true, the conclusion announced above might follow. But we are not able to agree with counsel that the premise states correctly any rule of law.

The word "municipal" means "pertaining to a city or a community within a state, possessing rights of self-government."

(Anderson's Law Dictionary.)    It is derived from the Latin "*municipalis*," which in its origin referred to a town possessing the rights of Roman citizenship and governed by its own laws; in other words, to a free town.   (Webster's International Dictionary.)    A municipal corporation is "a public corporation created by government for political purposes and having subordinate and local powers of legislation."    (Bouvier's Law Dictionary.)    Every authority on municipal law makes clear the distinction between a municipality and a county, as the word "county" is used in the Constitution and statutes of this state. In 1 Dillon on Municipal Corporations, fifth edition, section 32, the author says: "We may therefore define a municipal corporation in its historical and strict sense to be the incorporation by the authority of the government of the inhabitants of a particular place or district, and authorizing them in their corporate capacity to exercise subordinate, specified powers of legislation and regulation with respect to their local and internal concerns. This power of local government is the distinctive purpose and the distinguishing feature of a municipal corporation proper." And again, in section 34: "All corporations intended as agencies in the administration of civil government are public, as distinguished from private corporations.    Thus an incorporated school district, or county, as well as a city, is a public corporation; but the school district or county, properly speaking, is not, while the city is, a municipal corporation."

That the framers of our Constitution did not intend municipal corporations to include counties is clear, for the two terms are used to distinguish different organizations (sec. 6, Art. XVI; sec. 4, Art. XIII; *People* v. *McFadden,* 81 Cal. 489, 15 Am. St. Rep. 66, 22 Pac. 851).    A county is a body corporate (sec. 2870, Rev. Codes), so, likewise, is a school district (section 848) ; but neither possesses the powers of local legislation and control which are the distinguishing characteristics of a municipal corporation. (*State* v. *Leffingwell,* 54 Mo. 458; *State* v. *Barker,* 116 Iowa, 96, 93 Am. St. Rep. 222, 57 L. R. A. 244, 89 N. W. 204; *Memphis T.*

*Co.* v. *Board of St. Francis Levee Dist.,* 69 Ark. 284, 62 S. W. 902.)

Because of its autonomous character—its enjoyment of a large measure of organic independence—the municipal corporation is relieved to a considerable extent from officious, meddlesome legislation which seeks to interfere with its private or proprietary functions. The theory of local self-government for municipal corporations is firmly established in this state. (*Helena Con. Water Co.* v. *Steele,* 20 Mont. 1, 37 L. R. A. 412, 49 Pac. 382; *State ex rel. Gerry* v. *Edwards,* 42 Mont. 135, Ann. Cas. 1912A, 1063, 32 L. R. A., n. s., 1078, 111 Pac. 734.) But because of the difference in the character of a county and a municipality, the authorities which restrain the legislature from intermeddling with the private affairs of the municipal corporation are not in point when the question for determination is the right of the legislature to control county affairs.

"It is well-established law that a county is an involuntary corporation for governmental purposes, and is in no sense a business corporation; that the powers and obligations of the county are such only as the law prescribes or as arise by necessary implication therefrom. (*Eikenberry* v. *Bazaar Township,* 22 Kan. 556, 31 Am. Rep. 198; *Commrs. of Marion Co.* v. *Riggs,* 24 Kan. 255; 11 Cyc. 497; 7 Am. & Eng. Ency. of Law, 947.) Cities, however, in this state are municipal corporations, and neither their powers nor obligations are so restricted, and decisions as to their liability for negligence have no application here." (*Silver* v. *Board of Commrs.,* 76 Kan. 228, 91 Pac. 55.)

In 1 Dillon on Municipal Corporations, section 35, the author says: "With scarcely an exception, all the powers and functions of the county organization have a direct and exclusive reference to the general policy of the state, and are, in fact, but a branch of the general administration of that policy." In section 37 of the same work the distinction between municipal corporations on the one hand and political or civil divisions of the state created for administrative purposes, such as counties and school districts, on the other, is made clear. (See, also, *Shipley* v. *Hacheney,* 34 Or. 303, 55 Pac. 971.)

"A county is one of the civil divisions of the state for political and judicial purposes, created by the sovereign power of the state of its own will, without the consent of the people who inhabit it. (7 Am. & Eng. Ency. of Law, 2d ed., 900.) It is *quasi* corporate in character, but has only such powers as are expressly provided by law or are necessarily implied by those expressed." (*Independent Pub. Co.* v. *Lewis & Clark County,* 30 Mont. 83, 75 Pac. 860.)

In *Board of Commissioners* v. *Watson,* 7 Okl. 174, 54 Pac. 441, it is said: "A county is but a subordinate, political subdivision of sovereignty created for governmental purposes and for greater convenience in carrying on the public affairs."

"A county is a governmental agency or political subdivision of the state, organized for purposes of exercising some functions of the state government, whereas a municipal corporation is an incorporation of the inhabitants of a specified region for purposes of local government." (*County of San Mateo* v. *Coburn,* 130 Cal. 631, 63 Pac. 78.)·

In speaking of a county, the supreme court of Oregon, in *Yamhill County* v. *Foster,* 53 Or. 124, 99 Pac. 286, said: "It is merely a political agent of the state created by law for governmental purposes, and is charged with the performance of certain duties for and on behalf of the state."

"Counties are not in any respect business corporations for private purposes; nor are they organized exclusively for the common benefit of citizens and property holders within their respective limits. They are of a purely political character, constituting the machinery and essential agency by which free governments are upheld, and through which for the most part their powers are exercised. Their functions are wholly of a public nature. Counties are subordinate agencies for the orderly government of the state within the scope of their authority; hence they are subject to the control and direction of the legislature in which chiefly the sovereignty of the state is represented and exercised." (11 Cyc. 341.) In *State* v. *Board of Commissioners,* 170 Ind. 595, 85 N. E. 513, it is said: "A county is an involun-

tary corporation, organized as a political subdivision of the state by the legislature, the sovereign power, solely for governmental purposes. Such subdivisions are instrumentalities of government, and exercise the powers delegated by the state, and act for the state." In speaking upon the same subject, and to the extent of the state's control over a county, the supreme court of the United States, in *Rogers Locomotive Machine Works* v. *American Emigrant Co.*, 164 U. S. 559, 41 L. Ed. 552, 17 Sup. Ct. Rep. 188, said: "The county of Calhoun is a mere political subdivision of the state, created for the state's convenience, and to aid in carrying out, within a limited territory, the policy of the state. Its local government can have no will contrary to the will of the state, and it is subject to the paramount authority of the state, in respect as well of its acts as of its property and revenue held for public purposes. The state made it, and could, in its discretion, unmake it, and administer such property and revenue through other instrumentalities."

Since the enactment of Chapter 112, Laws of 1911, the involuntary character of counties in this state is somewhat modified, but the change thus wrought in the method of creating new [2] counties does not affect their status as political subdivisions of the state for governmental purposes. We think it very clear that only incorporated cities and towns are municipal corporations in this state.

Of course, the authority of the legislature over the affairs of the county is not plenary. There are certain restrictions imposed by the Constitution, for instance: "The legislative assembly shall not levy taxes upon the inhabitants or property of any county." (Sec. 4, Article XII.) But legislative power over counties is supreme, except in so far as it is restricted by the Constitution in express terms or by necessary implication. (11 Cyc. 343; *State* v. *McFadden,* 23 Minn. 40; *Rogers Locomotive Machine Works* v. *American Emigrant Co.,* above.)

In speaking of counties and their enforced submission to legislative control the supreme court of Colorado said: "They are purely auxiliaries of the state, and to the general statutes of

the state they owe their creation, and the statutes confer upon them all the powers they possess, prescribe the duties they owe, and impose the liabilities to which they are subject." (*Board of Commrs.* v. *Wheeler,* 39 Colo. 207, 89 Pac. 50.)

That the authority of the board of county commissioners of [3] Hill county to let a contract for county printing must be found written in the statutes, or necessarily implied, or it does not exist, is well understood. (*State ex rel. Lambert* v. *Coad,* 23 Mont. 131, 57 Pac. 1092.) In *Morse* v. *Granite County,* 44 Mont. 78, 119 Pac. 286, this court, in speaking of the authority of a county, said: "Its board of commissioners—its executive body—is a body of limited powers, and must in every instance justify its action by reference to the provisions of law defining and limiting these powers." Indeed, the Code itself (section 2870) declares the same rule: "Every county is a body politic and corporate, and as such has the power specified in this Code, or in special statutes, and such powers as are necessarily implied from those expressed." Under the doctrine of the maxim, *"Expressio unius exclusio alterius,"* the county does not have any powers other than those indicated in section 2870 above. The legislature in its wisdom has seen fit to prescribe the conditions upon which its agents—the counties—may conduct county business, and in the absence of constitutional restriction the authority to do so cannot be doubted.

In determining that the legislature has power to control *the manner* in which county road work shall be done the supreme court of North Carolina said: "Counties are but agencies of the state government. They can be created, changed, or abolished at the legislative will. * * * They are subject to legislative authority which can direct them to do as a duty all such matters as they can empower them to do." (*State ex rel. Tate* v. *Commissioners of Haywood County,* 122 N. C. 812, 30 S. E. 352. See, also, *Jones* v. *Commissioners,* 137 N. C. 579, 50 S. E. 291.) The [4] manner in which printing contracts shall be let is one of legislative or governmental policy, a question with which the courts have nothing to do. (*State* v. *Livingston Concrete B. & F. Mfg. Co.,* 34 Mont. 570, 9 Ann. Cas. 204, 87 Pac. 980.)

2. Again, counsel for appellants say: "As the provision of section 2897 under consideration bars outside competition, it prevents a county from getting the best work possible, and requires it to pay a higher price for its printing than if the newspaper to which the contract is awarded were permitted to sublet it to a printing establishment outside the state." In this instance the premise is correct, but the conclusion is unwarranted. There is not anything before us to indicate that the cost of county printing and supplies will be greater or the quality of the work poorer by reason of the restriction found in section 2897. It is admitted that there are many printing and publishing establishments within this state fully equipped and competent to supply any of the matters or things specified in Weldy's contract which he himself could not furnish; and for aught we know these Montana concerns may be willing to do the work or furnish the supplies as cheaply as any outside concern. In the absence of any showing that in its operation section 2897 imposes upon the taxpayers an arbitrary burden greater than they would otherwise have to bear, it is unnecessary to consider the effect of legislation which takes from one citizen his property and confers it upon another to swell his own private income.

We fail to see wherein the statute under consideration does [5] violence to the provisions of either the Fifth or Fourteenth Amendment to the Constitution of the United States, or section 3 of Article III of our own state Constitution.

3. Based upon the assumption that by reason of the restriction in section 2897 county printing costs more than it otherwise [6] would, counsel for appellants argue that the statute operates to take from the taxpayers a portion of the public moneys which might otherwise be saved, and thus indirectly operates to tax the inhabitants of the several counties, in violation of the provisions of section 4, Article XII, of our state Constitution. It is unnecessary to consider what the result would be if the fact which is assumed to exist had any real existence. Since there is not anything in the record to justify the assumption made, it is idle to pursue the inquiry further.

4. Again, it is insisted that the provisions of section 26, Article V, of our state Constitution, are violated by the enactment of [7] this statute, in that section 2897 is a local or special law regulating county affairs; and authorities are cited which seem to uphold the view that a statute of this character is not general or uniform in its operation. In 36 Cyc. 986, the terms "local" and "special," as applied to statutes, are defined as follows: "A special or private Act is a statute operating only on particular persons and private concerns." "A local Act is an Act applicable only to a particular part of the legislative jurisdiction." (See, also, 26 Am. & Eng. Ency. of Law, 2d ed., 532.) These definitions were approved by this court in *State ex rel. Geiger* v. *Long,* 43 Mont. 401, 117 Pac. 104, and we think they are correct. When we consider that section 2897 is state wide in its operation, it cannot be classed as a local statute; and, since it applies to all county printing contracts, it is not special.

5. Finally, it is insisted that the section under consideration [8] is invalid because, by preventing outside concerns from bidding upon county contracts or furnishing the counties with necessary supplies, it amounts to a regulation of interstate commerce. Two cases are cited: *People* v. *Buffalo Fish Co.,* 164 N. Y. 93, 79 Am. St. Rep. 622, 52 L. R. A. 803, 58 N. E. 34, and *People ex rel. Treat* v. *Coler,* 166 N. Y. 144, 59 N. E. 776. The first is clearly not authority in this instance. In it was considered one section of the Fish and Game Law of New York, which imposes a penalty upon anyone who has in his possession certain kinds of fish during certain periods of the year. The Buffalo Fish Company imported from Canada fish of the proscribed variety, and an action was commenced to recover the penalty. It was held that in so far as the statute affected the possession, by citizens of New York, of fish imported from a foreign country, it operated to regulate commerce between the United States and a foreign country, and was therefore void. In the second case there was called in question the validity of a statute of New York which provided that all stone, except paving blocks and crushed stone, used in state or municipal works

within the state of New York or which was to be worked, dressed, or carved for use, must be worked, dressed, or carved within the boundaries of New York state. By a divided court it was held that the citizens of other states having cut or dressed stone for sale had a right to compete in bidding for municipal work in New York, or at least had the right to sell their products to municipalities in New York state, and that the statute in question operated as a regulation of interstate commerce and was void. Parker, C. J., presented a vigorous dissenting opinion, the logic of which commends it to us.

Of course, it would not be within the power of the legislature of this state to say to an individual citizen, "You cannot have printing or bookbinding done unless you let the work to a Montana concern"; but, as Judge Parker points out in his dissenting opinion above, the state could not deny to a citizen the right to say, "I will not patronize any outside concern for my printing or bookbinding," and, if an individual or a private corporation in this state should insist that his or its printing be done by a Montana concern, no one would suggest that the right thus asserted could not be insisted upon. As we have already determined, a county is but an agency through which the state transacts a portion of its business. The state speaks through its legislature, and in our opinion has the same right that any individual citizen has to declare that it will procure its supplies, or have the supplies for one of its constituent parts procured, from a Montana concern.

In *Tribune Printing & Binding Co.* v. *Barnes,* 7 N. D. 591, 75 N. W. 904, the supreme court of North Dakota had for consideration a statute which provided: "All county printing shall be done in the state, and if practicable in the county ordering the same." In construing this statute the court used the following language: "Again, it is argued that if section 1807, *supra,* is construed to prohibit county officials from procuring county supplies or printed matter from those who manufacture such supplies at places without the state, it would operate to violate section 8 of Article I of the federal Constitution relating to com-

merce among the states.    No authority is cited in support of this
contention by counsel, and we are unaware of the existence of
any such authority.    Viewed as a question of principle, we are
unable to see why the state is forbidden to do what an individual
certainly may do with impunity, *viz.*, elect from whom it will
purchase supplies needed in the discharge of its corporate func-
tions.    If such election may lawfully be made, it certainly is
competent for the state to direct its officials by a mandatory stat-
ute to procure their office supplies from those who produce the
same within its own limits, it having elected to purchase none
other, either for the use of the state as such, or for the use of
subordinate political bodies within the state.''    In considering
this same objection to a statute similar to our own, the supreme
court of Idaho, in *In re Gemmill,* 20 Idaho, 732, Ann. Cas. 1913A,
76, 119 Pac. 298, reached the conclusion that such a statute does
not operate to regulate or restrict interstate commerce.    Whether
the legislation under consideration is wise or otherwise is not
a matter of concern at this time, but that in the absence of con-
stitutional inhibition the legislature may impose the restriction
found in section 2897 is not open to doubt.    Since no provision
of the Constitution has been called. to our attention which re-
stricts the legislature in its control over county affairs in the re-
spect mentioned in this statute, our conclusion is that the section
is not open to any of the objections urged against it.

The judgment of the district court is affirmed.

*Affirmed.*

MR. CHIEF JUSTICE BRANTLY and MR. JUSTICE SANNER concur.