## SMITH *v.* MESSER.

If, in the assessment of taxes, a part only of the land of a non-resident be included, the assessment will not, for that cause, be invalid.

If, in the description, the owner, or original proprietor, be not named, the presumption will prevail that they were unknown, so as to authorize a different description to be adopted; and all that is required in this, is that it shall enable one to find the land.

Such description is also sufficient in the advertisement, which is not required to contain the same words by which the land is designated in the list.

No estate can pass by a collector's deed but an estate in fee simple.

The omission of the collector to lodge the newspapers, containing the advertisements, with the town-clerk, will not avoid the sale.

In deriving a title from a sale for taxes, it is sufficient evidence of the official capacity of the collector, if he is shown to have been such *de facto.*

The deputy secretary's certificate upon the list, of the time when it was lodged with him, is evidence of the fact certified.

The signature of the tax-warrant by two of the selectmen is sufficient.

If the record of the sale show that its terms were that the highest bidder shall be the purchaser, and then show that M. was the purchaser, that is evidence that M. was the highest bidder.

If the tax-warrant require the collector to pay over the taxes collected at certain times, that does not preclude him from pursuing the necessary measures for their collection after that time.

Where it appears by the records of a town that the town officers were sworn, the clerk who made the record may, within a reasonable time afterwards, upon evidence of the fact submitted, obtain leave of court to amend the record, so as to show how the oath was administered.

WRIT OF ENTRY. John Smith, the late husband of the plaintiff, conveyed to the Manufacturers' and Mechanics' Bank, a corporation in Massachusetts, the James Hugh farm, so called, in Colebrook, a part of which farm is demanded in this suit. The plaintiff did not sign the deed. The bank conveyed the same to F. G. Messer, describing it particularly by metes and bounds, and Mes-

ser conveyed it to Edmund Chamberlain, September 20, 1830.

A part of the farm was assigned to the plaintiff as her right of dower, in the following words : " We, the undersigned, this day set off to Anne Smith, the widow of the late John Smith, her right of dower in land in Colebrook, called the James Hugh farm, and occupied now by Edmund Chamberlain, beginning on a bank, running westerly forty rods, to the Mohawk river, near a large maple tree, thence down said river one hundred and twenty-four rods to the Connecticut river, thence down said river forty-five rods, thence east one hundred and thirty-two rods, to the first mentioned bound. Also the south part of the south barn to the floor, with the right to pass in and out in said floor. Also in the house the width of the kitchen, the whole length of the house, and one third of the chamber, the north end. March 18, 1840." And she went into possession under the assignment, and so remained until divested by the defendant.

The plea is the general issue.

The defendant claimed title by virtue of a deed from a collector of taxes under his sale, and to sustain the validity of the sale offered evidence that the warrant for the annual town meeting of Colebrook, signed by two of the selectmen, was duly posted at a public place in said town ; that Jesse Carr was chosen moderator of the meeting ; Jonas Rolfe, town-clerk ; Daniel G. Hutchinson, Thomas Severance and George W. Vesper, selectmen ; and Daniel G. Hutchinson, collector of taxes ; that the record, as originally made, sets forth that the above officers were sworn, without stating what oath was administered, and at the time of the trial, upon satisfactory evidence furnished the court, that the oath of office prescribed by law was administered, Jonas Rolfe, still being town-clerk, was, upon notice, allowed to amend the record, by stating that said officers took the oath of office prescribed by

law; that the amendments were made against the exceptions of the plaintiff; that the town, at this meeting, voted to raise $1,300 for legal purposes, and that the selectmen were duly sworn, April 1, 1842, as appraisers; that two of the selectmen of Colebrook, by their warrant, dated April 2, 1842, to Daniel G. Hutchinson, collector, directed him to collect and pay over to the treasurer of the State of New-Hampshire $105 on or before December 1, 1842; to the county treasurer $175, on or before the third Tuesday of November, 1842, and to the selectmen of Colebrook the amount of the non-resident highway tax on or before January 1, 1843, and the residue of the whole amount of the list to the town treasurer for the use of the town when needed. The warrant is attached to the lists of resident and non-resident taxes, and is under seal; that a copy of the list was left with the deputy secretary, dated April 23, 1842, certified by the collector May 26, 1842.

The defendant also offered in evidence a copy of an advertisement, dated November 3, 1842, giving notice of a sale of land at auction, in Colebrook, on Saturday, the 11th day of February, 1843, at ten o'clock in the forenoon. The advertisement embraced the lands described in the aforesaid list of non-resident improved real estate, and described as follows: "Also one piece of land, set off by Edmund Chamberlain on settlers' lot No. 5, 128 rods long by 38 wide; 25, 3.00, 1.50, 2.22, 1.05." Also an advertisement published in the New-Hampshire Patriot and State Gazette, of the 10th, 17th and 24th days of November, 1842, and in the Coös County Democrat of November 29, and December 6 and 13, 1842; also a copy of the collector's sale, lodged with the town-clerk of Colebrook, February 18, 1843. The record sets out the sale of the lands, "at a public vendue, duly notified, and held at the inn of Edmund Chamberlain, in Colebrook, on the 11th day of February, 1843;" and the condition of the

sale provides that "the person who will pay the taxes and costs, taxed on each bid or lot of land, for the least quantity of the same, shall be the purchaser." The clerk of the vendue, Thomas Severance, was duly sworn. Then follows a schedule of the number and range of the lots, number of acres, tax and cost, bidders' names, and quantity of land bid off; and, among others, the tract described "as set off by Edmund Chamberlain on settlers' lot No. 5, 128 rods long, 38 wide, supposed to belong to widow Anne Smith," is set down as bid off to Frederick Messer for tax and cost, $4.15 — 25 acres. The sale was closed before six o'clock on said 11th of February.

The plaintiff excepted that it does not appear that the sale opened after ten o'clock in the forenoon, nor that Messer was the highest bidder for the same, or that the bid was for the least quantity of land to pay the tax and cost.

The defendant also offered in evidence a deed, Daniel G. Hutchinson to F. G. Messer, dated February 28, 1844; acknowledgement without date, and recorded March 2, 1844, conveying land in the following words: "Also the following described non-resident improved real estate, in said Colebrook: A piece of land set off by Edmund Chamberlain on settlers' lot No. 5, 120 rods long and 38 rods wide." Other evidence introduced by the defendant sufficiently appears in the opinion of the court.

The plaintiff takes the following additional exceptions to the validity of the sale:

1. That the sale was after the return day of the warrant, and after the time in which the collector was required to pay over to the State treasurer, &c., the assessments.

2. That the town-clerk had no right to amend the record, nor the court power to grant such leave, there being nothing to amend by.

3. There is no evidence that the newspapers were lodged the with town-clerk within ten days after said sale.

4. That in the assessment list, and advertisement and sale, no mention is made or description given of a " part of a house " and " barn," which are part and parcel of the plaintiff's right of dower of lot No. 5, and on different parts of that lot.

5. That the list left with the deputy secretary is not similar to the assessment, but unlike it.

6. That the sale is different from the list, advertisements or assessment.

7. That the collector advertised and undertook to sell the whole estate in fee, and that he could not sell, nor was there any thing but the plaintiff's right of dower — a life estate in the premises — which he could sell.

8. That the advertisement does not conform to and agree with the assessment.

9. That the advertisements commenced too early and were published too late for the sale.

10. That the house and barn were included in the valuation and assessment, but not in the advertisements and sale.

11. That the deed does not convey the premises sold. It is void for uncertainty, and for other respects.

12. That the land, as assessed, is not the same which was set off to the plaintiff as her dower, but differs materially in quantity, description, &c.

13. That it does not appear that there was any warrant from the State and county treasurers, directing the selectmen to assess State and county taxes.

14. That the clerk of the county convention of members of the legislature, in June, 1841, had not the oath, by law prescribed, administered to him.

15. That Hutchinson was not legally collector of taxes for the year 1842, because he did not give a bond, with sureties, to the town within six days of his choice, or at any time.

16. No evidence that the list was lodged with the

deputy secretary in proper time, or returned to the collector before he advertised and sold.

17. That the warrant to Hutchinson was signed but by two of the selectmen.

It was agreed that the foregoing case be transferred to this court for their determination, and if they should be of opinion that the sale is a legal and valid one, the case is to be sent back for trial by jury, if the plaintiff requests it. If they should adjudge the sale bad, then judgment to be rendered for the plaintiff.

*Bellows*, for the defendant, cited *Gibson* v. *Bailey*, 9 N. H. Rep. 168, 175 ; *Willis* v. *Battelle*, 11 Mass. 477 ; *Haven* v. *Richardson*, 5 N. H. Rep. 113 ; *Lyman* v. *Loomis*, 5 N. H. Rep. 408 ; *Jeffers* v. *Radcliff*, 10 N. H. Rep. 242 ; *White* v. *Gay*, 9 N. H. Rep. 126 ; *Ex parte Bollman*, 4 Cranch 75 ; *United States* v. *Batchelder*, 2 Gall. C. C. R. 15 ; *Spear* v. *Ditty*, 8 Vt. 419 ; *Tucker* v. *Aiken*, 7 N. H. Rep. 113, *and cases cited ; Doty* v. *Gorham*, 5 Pick. 487 ; *Sprague* v. *Bailey*, 19 Pick. 436 ; *Ford* v. *Clough*, 8 Greenl. 334.

*Young*, for the plaintiff, cited 6 N. H. Rep. 191 ; 3 do. 413 ; 4 Cranch 403 ; 18 Johns. 443 ; 4 Peters 359 ; 8 Vt. 419 ; Rev. Stat., p. 113, secs. 8, 9 ; 12 Vt. 569 ; 1 N. H. Rep. 93 ; 10 Price 412 ; 2 Black. Com. 347 ; 2 N. H. Rep. 202 ; 9 do. 524 ; 2 Vt. 318 ; 8 do. 419 ; 1 Greenl. 248 ; 3 N. H. Rep. 340 ; 15 Mass. 181 ; 10 do. 113 ; 11 do. 480 ; 14 do. 145 ; 2 Greenl. 218 ; 7 N. H. Rep. 113.

GILCHRIST, J. Numerous exceptions are presented by this case, of which all, from the fourth to the twelfth inclusive, of those so numbered and exclusive of the ninth, relate to discrepancies in the descriptions which have been necessarily given of the demanded premises in the various written acts relied upon by the parties to sustain their respective titles. The land appears to be perfectly

described by the report of the commissioners, who assigned dower to the plaintiff out of the farm of her deceased husband, which is her title to the same.

The statute of July 4, 1829, under which the proceedings were had which constitute the title of the other party, provides that " the selectmen shall deliver to the collectors a list of all taxes assessed upon the land of non-residents, and therein insert the name of the owner of the land, if known ; otherwise the name of the original proprietor, and the number of acres taxed, and the number of the lot and range," &c., " and if the name of the owner and the original proprietor of any such land be unknown, the quality of the land, the number of the range and lot, if lotted ; otherwise such description of the land taxed as it is usually known by, being inserted in said list, shall be a sufficient description of said land." A copy of that list is to be delivered to the deputy secretary, and after it has been returned to the collector, he shall advertise in the manner prescribed, that so much of the delinquent's land as shall suffice to pay the taxes and costs, will be sold at a time and place designated, &c. ; and this advertisement is. required to contain the same description of the land taxed as is required to be made in the lists aforesaid.

In the list furnished by the selectmen to the collector, the premises are described: " The following described non-resident improved real estate, supposed to [be] widow Ann Smith's dower. One piece of land set off by F. G. Messerve in settlers' lot No. 18, with one half the pearl ash, one half acre. Also, one piece of land as set off by Edmund Chamberlain, in settlers' lot No. 5, 128 rods long, 38 wide — 25 acres."

Now whether that description covers the same land assigned as the plaintiff's dower by Chamberlain, except so far as regards certain easements in the barn, which, it seems, are not embraced in the description, is a question of

fact. For any thing that appears it well might have done so. But if it did not, the only consequence is, that the plaintiff is still entitled to such part of the land and buildings, held in dower, as are not so embraced. It is not a necessary consequence that all the proceedings are invalid for the purpose of passing such portions of the land as were regularly assessed, advertised and sold. Upon a principle that would annex such consequences to an omission of this sort, it would be a difficult thing for selectmen or assessors to make a valid tax, or collectors to make a title under their proceedings to collect a tax. The principle asserted seems to be no less than this, that if, in assessing a tax, a part of the land of a non-resident is, by accident, or through a mistake of the assessors as to the boundaries, title, possession, or otherwise, omitted to be included in his tax, the assessment is null as to him, and no effectual proceedings can be had to enforce it. The law which requires the assessors to make a just and perfect invoice and valuation of the property, subject to their proceedings, for the purpose of making an equal assessment upon the owners of the property, was never, as we think, intended to involve such extreme consequences.

The description of the land contained in the assessment appears to conform to the requirements of the statute. The name of the owner and of the original proprietor being omitted, the presumption is that they were unknown, and the description is such as the land is commonly known by. *Cardigan* v. *Page*, 6 N. H. Rep. 182.

In the advertisement it is described as one " piece of land set off by Edmund Chamberlain on settlers' lot No. 5, 128 rods long and 38 rods wide — 25 acres." Is this the same description as is contained in the list? In requiring the same description to be given, we need not suppose that the statute requires the descriptions to be copies of one another. Where that degree of accuracy is intended it is commonly expressed. A similar descrip-

tion, or an advertisement descriptive of the same land, seems sufficient to answer all the purposes contemplated by the statute, and to fulfill, indeed, its literal requirements. This advertisement is, therefore, sufficient if it will enable one to identify the land. It describes it as twenty-five acres, as part of the settlers' lot No. 5, and as having been set off by Edmund Chamberlain. The owner's name was not inserted because it was not known; a presumption which is allowed in general where it is not inserted. *Cardigan* v. *Page*, 6 N. H. Rep. 182. Mrs. Smith had a life estate in it, but was not, in a proper sense, the owner. The description is such as would enable one to find the land, as well, perhaps, as the designation of lots and original proprietors' names, authorized by the statute. It is seldom that lands are capable of being so described by unquestionable natural boundaries, and still more seldom that they are in fact so described as to enable one to find them without a knowledge of conventional lines, and the ownership or the reputed ownership of adjoining estates. The part of the settlers' lot, numbered five, set off by Edmund Chamberlain, was a description of this sort.

The description has more minuteness in the record of the sale, where the words, "supposed to belong to widow Ann Smith," are appended, and the deed contains the same description in words.

No title can pass by a collector's deed under the statute, but an estate in fee-simple. The sale is of the land by some description sufficient to fix its location and boundaries, and no attempt on the part of the collector to limit the estate would be of any avail. The matter of the seventh exception, therefore, fails. All interested in the land are delinquent if the taxes are not seasonably paid.

The seventh section of the act referred to (N. H. Laws 566), requires the collector to lodge with the town-clerk the newspapers containing the advertisements of the sales,

and there is no evidence that that was done within ten days, as required by the statute. But it is plain that this is an omission which in no way affects the legality of the proceedings prior to that default. If they have, up to that moment, been regular, the purchaser has paid his money, and acquired an interest in the land, which cannot be taken from him by the mere omission of the collector to comply with certain directions which the law has prescribed for his guidance.

The statute prescribes, as to advertising the sales, that the advertisements shall be published, in the papers named, three successive weeks, beginning eight weeks before the day of sale. It is absurd to suppose that this beginning must be exactly eight weeks before the sale. If it is more than that time there is an evident compliance with the requirement.

It sufficiently appears that Hutchinson was *de facto* collector, exercising the functions of that office under color of an election; and it was held in *Tucker* v. *Aiken*, 7 N. H. Rep. 113, that the acts of an officer *de facto* are in general valid, so far as the rights of third parties are concerned, and that the regularity of his appointment is not to be collaterally inquired into in proceedings to which he is not a party. The case of *Cardigan* v. *Page*, 6 N. H. Rep. 182, is there adverted to, and the doctrine which it seems to establish declared to be untenable. The giving of bonds, or the contrary, undoubtedly would have affected the tenure of his office, had proper measures been instituted for the purpose of testing its validity, but has no bearing upon the fact that he was in the open exercise of the functions appertaining to the office, and was collector in fact.

The deputy secretary certifies that the copy of the assessment was lodged by the collector with him as early as the time required by the statute, and this is the usual and proper evidence that it was so lodged. Although not

expressly required by statute to make such a record, the nature of his undoubted official duties, in connection with these copies of assessment, rendered it necessary that he should keep a record of the time of their reception and of their return, and his entries in the discharge of that clear official duty are, therefore, evidence, the same as if he was by express statute required to make them. It is upon the same principle that the certificate of a register of deeds, upon a deed that he has recorded, is evidence of that fact. The case falls within the principle laid down in Greenl. Ev., sec. 483. "Where the particular facts are inquired into and recorded for the benefit of the public, those who are empowered to act in making such investigations and memorials, are, in fact, the agents of all the individuals who compose the State. On the ground, therefore, of the credit due to agents so empowered, and of the public nature of the facts themselves, such documents are entitled to an extraordinary degree of confidence."

The warrant was signed by two of the three selectmen, and that is sufficient where the act is one that is done in the discharge of an ordinary official duty.

The statute under which the defendant's claim is derived comes under the general rule of construction laid down in *Birch* v. *Bellamy*, 12 Mod. 540, that "where the power to do an act was originally granted by a statute, it must be shown in pleading that the act was done according to the direction of that statute."

And what would be required to appear in pleading must also be shown in evidence. The statute authorizing sales for taxes against non-resident proprietors, requires that the land shall be sold to the person who will pay the amount of the tax, and incidental charges, for the smallest quantity of land so exposed for sale. It must therefore appear, with reasonable certainty, that it was so sold, and the sale is void unless it so appear. *Cardigan* v. *Page,*

Smith *v.* Messer.

6 N. H. Rep. 182. The return or record of the sale in this case shows that, by its terms, "that person who will pay the taxes, and cost taxed on each bid, or lot of land, for the least quantity of the same, shall be the purchaser." It then shows that the defendant was the purchaser of the lot in controversy. The logical inference is, therefore, obvious, and as strongly as a direct averment could be, that he was the person that so bid. We do not think that the letter of the law, or any rule that provides for the construction of such statutes, requires any thing more positive and precise, to show a compliance with the law.

The regulation that the sale shall take place between the hours of ten in the morning and six in the evening, is contained in the *proviso* of the statute; and that circumstance, as well as the peculiar nature of the regulation itself, forcibly suggests a question whether it ought not to be left to the opposite side to prove, in avoidance of the sale, a departure from the law in this particular. Independently of such provision, the selection of a time for the sale, different from that which it allows, would awaken a suspicion of collusion; and the manifest intention of the legislature was to institute this safeguard against such unfair practices, by vacating a sale not made within the prescribed hours of the day. We think that it may safely be left to the party deprived of his land by the sale, to furnish the requisite evidence of a deviation of this sort, which would, if detected, undoubtedly avoid the sale. *Rex* v. *Pemberton*, 2 Bur. 1036; *Hotham* v. *E. Ind. Co.*, 1 T. R. 636.

The warrant directed to the collector required him to pay the amounts collected at times therein named; but this direction surely cannot be supposed to vacate the warrant as to all taxes not actually collected at those times. The exception that the sale was after the return day of the warrant therefore fails.

The only remaining question which the case as report-

ed presents, is upon the amendment which the town-clerk was permitted to make, of the record as made up by himself, relating to the oath administered to the town officers. The case falls clearly within the principle of *Gibson* v. *Bailey*, 9 N. H. Rep. 168. The evidence was addressed to the court by the ordinary and proper channels, which are written proofs, and was satisfactory to warrant the amendment.

According to the agreement of the parties, therefore, the case must be sent back for trial.