MILLARD F. CALDWELL, Governor of the State of Florida, J. M. LEE, Comptroller, J. EDWIN LARSON, Treasurer, NATHAN MAYO, Commissioner of Agriculture, and J. TOM WATSON, Attorney General of Florida, as Trustees of the Internal Improvement Fund, v. DONALD B. KEMPER and ELIZABETH B. KEMPER, his wife.

31 So. (2nd) 555                                    June Term, 1947
July 3, 1947                                     Special Division A

232

*J. Tom Watson*, Attorney General, *Sumter Leitner*, Assistant Attorney General, and *Ernest W. Welch*, Special Assistant Attorney General for the State of Florida, *Julius F. Parker, John T. Wigginton, Leo L. Foster, T. T. Turnbull* and *Parker, Foster & Wigginton*, for Trustees of the Internal Improvement Fund of the State of Florida, appellants.

*Mabry, Reaves, Carlton, Anderson, Fields & Ward*, for appellees.

*Hill & Hill, Lewis H. Hill, Jr., W. B. Dickenson, Jr., James N. Daniel, Manley P. Caldwell, Lawrence Truett*, as amicus curiae.

TERRELL, J.:

The Legislature of 1911 enacted Chapter 6159, the pertinent part of which is now embraced in Section 270.11, Florida Statutes 1941, and is as follows:

"In all contracts for sales and all deeds for the sale of land executed by the Trustees of the Internal Improvement Fund of the State of Florida there *shall be reserved for the Trustees of the Internal Improvement Fund and* their successors . . . an undivided *three fourths interest* in and title in and to, an

*undivided three-fourths interest* in all the *phosphate, minerals and metals* that are or may be in, on, or under the said above described land; and an undivided *one-half interest in all the petroleum* that is or may be in, on or under said above described land, with the privilege to mine and develop the same."

The legislature of 1937 enacted Chapter 18296, sometimes known as the Murphy Act, Section 9 of which was later amended and is now Section 192.38, Florida Statutes Annotated, and is as follows::

(1) "At the expiration of two years from the date Chapter 18296, Acts of 1937, became law, the fee simple title to all lands in this state, against which there remained outstanding tax sale certificates which, on the date, said act became a law, were more than two years old, became absolutely vested in the state, and every right, title or interest of every nature or kind whatsoever of the former owner of said property, or anyone claiming by, through or under him, or anyone holding a lien thereon, ceased, terminated and ended and the state through the trustees of the internal improvement fund may, (a) sell said lands to the highest and best bidder for cash at such time and after giving such notice and according to such rules and regulations as have or may be fixed and adopted from time to time by said trustees of the internal improvement fund."

Pursuant to authority vested in them by the last quoted act, Trustees of the Internal Improvement Fund, on February 22, 1944, executed its deed and sold to Donald B. Kemper certain lands in Bay County Florida, said deed being made without any reservation of oil or mineral rights as provided by the Act first quoted herein or any other act.

On November 9, 1943, the Trustees of the Internal Improvement Fund adopted a resolution requiring that oil and mineral reservations be made in deeds executed by them to lands conveyed under Chapter 18296. Pursuant to said act and resolution the Trustees of the Internal Improvement Fund, on June 28, 1945, executed a deed to H. S. McQuagg, describing certain lands in Bay County, Florida, said deed containing the oil and mineral reservations provided by the act

first quoted herein. H. S. McQuagge later conveyed his title in said lands to Donald B. Kemper and his wife, Elizabeth Kemper.

Donald B. Kemper and Elizabeth B. Kemper denied the authority of the Trustees of the Internal Improvement Fund to claim oil and mineral rights in the deed so executed to McQuagge and refused to recognize it. The Trustees of the Internal Improvement Fund then instituted this suit by bill in chancery, alleging the facts here stated and praying that a declaratory decree be entered determining whether or not the State of Florida or the Trustees of the Internal Improvement Fund for the State had any lawful claim to oil and mineral rights in the said lands. Answer was filed denying the right of the State or the Trustees of the Internal Improvement Fund to claim or reserve oil and mineral rights in lands acquired under Chapter 18296. On final hearing the chancellor so decreed and this appeal was prosecuted from that decree.

The point for determination is whether or not the state of Florida or the Trustees of the Internal Improvement Fund for the State may, under the provisions of Section 270.11, Florida Statutes 1941, or any other law of the State, make reservations of oil and mineral rights in deeds for the sale of lands acquired pursuant to Chapter 18296, Acts of 1937.

It will be observed by inspection of Section 270.11, Florida Statutes 1941, and its context, that it has to do with oil and mineral reservations in the "public lands," which this court has defined as being a different class of lands from those accruing to the State under Chapter 18296. State v. Holland 151 Fla. 806, 10 So. (2) 577. Chapter 18296 provided a complete set up for disposing of lands acquired by the state thereunder, and since it deals with a different class of lands from those contemplated by Section 270.11 and does not by work or implication require oil and mineral reservations to be made as there required, we are constrained to hold that Section 270.11 in no way affects or controls the sale of lands under Chapter 18296. It is quite true that lands acquired by the State under the latter act are different in some respects from the "public lands" discussed in State v. Holland, and are disposed of under different provisions of law.

Chapter 18296 had to do with lands forfeited to the state for the non-payment of State and County taxes. It gave the former owners two years within which to redeem their lands by paying the cost of the sale, but if they fail in this, then the title becomes vested in the state absolutely and the Trustees of the Internal Improvement Fund may sell to the highest and best bidder for cash. Chapter 21684, Acts of 1943, Amended Chapter 18296, in many respects, one of which amendments charged the Trustees of the Internal Improvement Fund with the "administration, management, control, supervision, conservation and protection of the lands and products on, under or growing out of or connected with the lands mentioned in this section."

Aside from these provisions, we think that part of the quoted section of Chapter 18296 (Murphy Act) authorizing the Trustees of the Internal Improvement Fund to sell the lands referred to therein under "such rules and regulations as may be fixed and adopted from time to time" by them affords ample authority for reserving oil and mineral rights in such deeds of sale. The State's title had ripened into a fee simple and there being no prohibition to the contrary, the additional powers vested in the Trustees of the Internal Improvement Fund certainly authorized them to impose such reservations as an individual could impose under like circumstances. We think the latitude given the Trustees of the Internal Improvement Fund in handling and disposing of these lands forces this conclusion.

It follows that the reservation of oil and mineral rights in the deed executed by the Trustees of the Internal Improvement Fund to H. A. McQuagge was good and binding and may be enforced, but no such reservation having been made in the deed to Donald B. Kemper, it cannot be enforced as to the lands described therein, because the statute does not in terms make the reservations, but empowers the Trustees of the Internal Improvement Fund to make it. The final decree of the chancellor is accordingly affirmed in part and reversed in part.

Affirmed in part and reversed in part.

THOMAS, C. J., CHAPMAN, J., and WILLIAMS, Associate Justice, concur.