MORGAN C. PROBASCO, SR.,

*Plaintiff and Appellant*

vs.

ELLA M. SIKES, et al.,

*Defendants*

and

The Sohio Petroleum Company, an Ohio Corporation, and The Board of County Commissioners of Albany County, Wyoming

*Defendants and Respondents.*

(No 2768; February 26th, 1957; 307 Pac. (2d) 817)

For the plaintiff and appellant the cause was submitted upon the brief and also oral argument of G. R. McConnell and Walter Scott both of Laramie, Wyoming.

For the defendant and respondent Sohio Petroleum Company the cause was submitted upon the brief of Brown, Drew & Apostolas of Casper, Wyoming.

For the defendant and respondent Board of County Commissioners of Albany County, Wyoming, the cause was submitted upon the brief and also oral argument of J. Richard Plumb, Deputy County and Prosecuting Attorney of Laramie, Wyoming.

Heard before Blume, C. J., and Harnsberger and Parker, J. J.

## OPINION

Mr. Chief Justice BLUME delivered the opinion of the Court.

The main question involved in this case is whether or not a board of county commissioners may reserve the mineral rights in a property when that property is sold after having received a deed for it.

This is an ordinary action to quiet title in plaintiff Morgan C. Probasco, Sr., in and to lots 5, 6, 7, and 27 to 32, inclusive, in block 7 of Commercial Addition to the town of Rock River, Wyoming.

The only defendants appearing in this case and defending are the Board of County Commissioners of Albany county, Wyoming, and the Sohio Petroleum Company holder of a lease herein. The facts in the case are stipulated by the parties as follows:

"1. That lots five (5) and six (6), block seven (7), Commercial Addition to the Town of Rock River, Albany County, Wyoming was on and prior to 28th, June,

1921, owned in fee simple by the Butler Corporation and that on said date there were no taxes due on said lots.

"2. That on the 28th day of June, 1921, the Butler Corporation conveyed the said lots five (5) and six (6), of said block seven (7), to Ella M. Sikes and reserved oil, gas and mineral rights in said warranty deed which appears of record in book 118, page 68, Records of County Clerk of Albany County, having been recorded July 11, 1921.

"3. That Albany County, Wyoming acquired lot six (6) and twenty six (26) to thirty two (32) of said block seven (7) by tax sale on July 14, 1923, recorded tax sale record Number two (2), page 107.

"4. That Albany County, Wyoming acquired lot seven (7) in said block seven (7), by tax sale on July 6th, 1925, recorded tax sale record number two (2) page 108.

"5. That Albany County, Wyoming, acquired lot five (5) in said block seven (7), by tax sale on July 6, 1925, recorded tax sale record number two (2) page 108.

"6. That said property was never redeemed from said county and that all of said lots were conveyed to the plaintiff herein by quit claim deed on the 7th day of May, 1952, and that by said deed said county made a reservation of one-half ($\frac{1}{2}$) of all minerals including oil and gas, and all rights of way for county roads, established or to be established. Said deed recorded on the 9th day of May, 1952, in Photo thirty two (32) page 186.

"7. That at no time herein involved were any of said lots separately assessed for minerals, oil and gas.

"8. That said sales by county to plaintiff were never declared to be invalid.

"9. That there was no reservation of mineral rights

by the United States to patentee of land herein in patent to Jennie Laura Phelan.

"10. That defendant, Sohio Petroleum Company is the lessee named in an oil and gas on the 9th day of June, 1954, by lease from Butler Corporation as to lots five (5) and six (6) in said block seven (7), recorded in book forty eight (48), page 242 on the 28th day of June, 1954.

"11. That all defendants except Albany County and Sohio Petroleum Company are in default for want of answer.

"12. That neither the plaintiff nor anyone else has possessed lots 5 and 6 of Block numbered 7 in said addition adversely to the reserved mineral estate of Butler Corporation for any minimum period of limitation sufficient to assert a title based upon adverse possession, and no minerals, either oil and gas or others, have been produced or extracted from said lots or any part thereof, but the severed mineral estate reserved to Butler Corporation has remained undeveloped and unproductive ever since the reservation thereof and up to and including date hereof."

The trial court awarded the mineral rights in lots 5 and 6 in block 7 to the Butler Corporation or its statutory trustees, and to the Sohio Petroleum Company, lessee of that company. The trial court also awarded the mineral rights in the remaining lots to Albany County and awarded the surface rights in the lots above mentioned to the Plaintiff Probasco. From that judgment the plaintiff has appealed. The county did not appeal.

## I.

The plaintiff contends that when he received the deed from the Board of County Commissioners of Albany County he had the right to the whole of the prop-

erty, including the mineral rights, and that the Board of County Commissioners of Albany County had no right to reserve them. There is a dearth of direct authority on the question. Boards of county commissioners have such powers, and such powers only as have been conferred upon them by the constitutions of the states. 20 C.J.S. § 82, p. 849. So we shall examine some of the statutes of this state applicable herein.

Section 32-1624, W.C.S. 1945, provides for a certain form of tax deed to be issued by the county treasurer and possibly contemplates that when such deed is issued the whole of the title and all interests in the property shall pass. That may be true also whenever a deed is issued to a private party pursuant to an assignment of the certificate of purchase to the county, and an assignment of such certificate to a private party under §§ 32-1703, 32-1704. Prior to 1929 the county became the owner of the property when it was sold for taxes by the county treasurer, and in order that such property might again pass into private ownership, a deed by the county treasurer was necessary. §§ 2894 to 2897, Wyoming Compiled Statutes of 1920. By chapter 68 of the Session Laws of Wyoming of 1929, a radical change was made. That was subsequently slightly amended and as so amended is now embodied in § 32-1701 and § 32-1703, W.C.S. 1945, which provide:

32-1701. [As correctly appearing in R.S. 1931, § 115-2340] "At the tax sale each year, in each county of this state, any real estate that cannot be sold for the amount of taxes and cost of advertising due on the same, at the time of such sale, or on which no bids are offered, shall be bid in by the county treasurer for his county, and such county treasurer shall thereupon issue a certificate of purchase to said county."

32-1703. "After such real estate has been bid in by said county, the county commissioners of said county shall have authority to dispose of the same at any time, at either public or private sale. If sold at public sale, said commissioners shall have the right to reject any or all bids, and may continue to offer the same for sale, until the same shall be disposed of; provided, that if said property has not been disposed of prior to the expiration of four (4) years after the date of sale to the county, the county treasurer shall issue a tax deed for said property to the county, which shall be recorded in the county clerk's office, and thereupon said board of county commissioners shall have authority to dispose of said property at private sale and cause a deed to be executed to the purchaser, and signed by its chairman and clerk."

It is quite apparent that the first part of § 32-1703, construed in the light of § 32-1701, refers only to the sale of a certificate of purchase obtained by the county. It does not then have an absolute title. But after the county has held the certificate of title for four years and it has not been sold, then the county treasurer issues to the county an absolute deed, and the property itself is thereafter sold by the county, not by a deed from the county treasurer but by a deed issued by the board of county commissioners and signed by its chairman and clerk. § 32-1704, as it now stands, provides that the *assignee* of the county receives a title from the county treasurer, as shown by the end of that section. That, at first blush, would seem to show confusion. But the matter becomes clear when we find that we must distinguish between an *assignee* of a county and a *grantee*. An *assignee* acquires the certificate of purchase issued to the county. A *grantee* receives a deed issued by the board of county commissioners through its chairman and clerk, as clearly shown by the provisions of § 32-1703. In the one case no deed has been issued to the county, in the other the

county has become the absolute owner by the issuance to it of a deed.

It is undoubtedly true, as counsel for plaintiff contend, that it is not the policy of the state to become a landowner through its tax laws, but its aim is to collect its revenues and leave the ownership of land in the citizens and on the tax rolls. 85 C.J.S. § 831, p. 176. But that does not help us much in the case at bar. The title to the property in controversy was in the county for many years, probably because no private parties wanted it. Nor does it appear, so as to benefit the taxing units, that, when the county sold the property to the plaintiff, it could have received a greater purchase price than it received if it had not reserved the mineral rights. In the case at bar the surface rights of the property in question were bought by plaintiff from the county on May 7, 1952. This action was brought on August 23, 1954, or more than two years later. On the face of things, it seems somewhat strange that a man may buy a specific interest in property for a certain price, go away satisfied, and then two or more years later come back with the right to ask for an additional interest as a gratuity on the theory that the seller had no right to retain such additional interest.

We are cited, however, to the case of Kopplin v. Burleigh County, 77 N.D. 942, 47 N.W.2d 137, 139, in which it was held that the county in giving a deed to the purchaser had no right to reserve the mineral rights. In that case the statute provided:

" 'Upon the payment of the purchase price in cash, or the payment in full of all installments, with interest to the date of payment, the county shall execute and deliver to the purchaser a deed conveying to him *all right, title, and interest of the county in and to such property.*' " NDRC 1943, 57-2815, subd. 5. (Italics supplied.)

The court reasoned that the statute in prescribing the form had thereby made every fact recited in the form a matter of substance, and that this substance may not be varied by the county officers.

In Smith v. Messer, 17 N.H. 420, 428, it is stated apparently at random:

"No title can pass by a collector's deed under the statute, but an estate in fee simple. The sale is of the land by some description sufficient to fix its location and boundaries, and no attempt on the part of the collector to limit the estate would be of any avail"

No statute is cited so we do not know whether the case is in point or not . It seems to refer to the same kind of a deed as a treasurer's deed under our statute, the form of which is prescribed. If so, the case is not in point.

We do not say the decisions in these cases were wrong. They were decided under certain statutory provision which were unlike the statutory provisions in this state. It may be that so long as the county holds only a certificate of purchase from the treasurer, mentioned in the first part of § 32-1703, W.C.S. 1945, it would have no right to reserve any mineral rights when it assigns the certificate to a private party. It may be the statute contemplates that in such case it assigns, in selling the cerificate, the whole of the land embraced in the certificate. But the situation is changed when, after the expiration of four years, it receives a deed from the treasurer. The statute prescribes no form of a deed to be executed by the chairman of the county board and its clerk. The form of deed prescribed for the county treasurer in § 32-1624, W.C.S. 1945, does not apply. The form to be used is left wholly to the discretion of the board. When the

deed to the county is executed, it takes a complete and absolute title. Pederson v. Federal Land Bank of St. Paul, N.D., 72 N.W.2d 227; Town of Remington v. Wood County, 238 Wis. 172, 298 N.W. 591; Riley v. Bank of Commerce of Roswell, 37 N.M. 338, 23 P.2d 362; Moeller v. Washington County, 352 Pa. 640, 44 A.2d 252; Municipal Investors Ass'n. v. City of Birmingham, 298 Mich. 314, 299 N.W. 90, 94, citing Sinclair v. Learned, 51 Mich. 335, 16 N.W. 672, 677; In re Airport Property, 28 Erie 217. The rule is the same if the state bids in the land. Merchants Finance Corporation v. Kuchel, 83 Cal.App.2d 579, 189 P.2d 513; and see 85 C.J.S. § 838, p. 185, n. 33. It has been held that the county's title is so complete that while it holds it in trust for itself and other taxing units under the provisions of § 32-1706, W.C.S. 1945 (Hunter v. McKlveen, 353 Pa. 357, 45 A.2d 222), the other taxing units cannot, in the absence of a legislative provision, compel the county to sell the land for which it has a deed. Town of Remington v. Wood County, supra.

It is undoubtedly true that the "legislature may prescribe the manner in which county property may be sold, and such prescription must be complied with." 20 C.J.S. § 172, p. 1004. But in the case at bar § 32-1703, W.C.S. 1945, has not prescribed any manner or mode by which the property may be sold. The power conferred after the county obtains a deed is the broad permissive power to sell the land without any limitations, restrictions, or terms, except that it mentions private sale. So the question is whether or not the board of county commissioners may adopt its own manner, method, terms, and conditions by and under which it may dispose of the property at such private sale.

Turning to the subject of "Officers" in 67 C.J.S., pp. 366, 368, 370, 371, 372, 379, we find it stated:

"Public officers have only such power and authority as are clearly conferred by law or necessarily implied * * *."

"In addition to powers expressly conferred on him by law, an officer has by implication such powers as are necessary for the *due and efficient exercise of those expressly granted,* or such as may be fairly implied therefrom." (Italics supplied.)

"A general grant of power, however, unaccompanied by definite directions as to how the power is to be exercised, implies the right to employ means and methods necessary to comply with statutory requirements."

"* * * usually he (an officer) has implied authority to adopt such reasonable rules and regulations as are necessary to the due and efficient exercise of the powers expressly granted."

"The grant of power to a public officer carries with it a mandate that such power shall be exercised for the *public good* * * *." (Italics supplied.)

"In addition to the powers expressly conferred on a board or commission, it has by implication such powers as are necessary for the due and efficient exercise of those expressly granted, or such as may be fairly implied therefrom."

Bearing these rules in mind, can this court say that the broad power expressly granted to the county was not exercised efficiently for the public good? We hardly think so. A private party who has absolute title to a piece of property may sell it in such manner as he deems best. He may divide the property and sell such portions as to him seem proper; he may sell it by dividing it vertically or horizontally. What a private party may do is not an unfair criterion of what a county may do, in the absence of legislation to the contrary. In any event it is far from clear that the board

of county commissioners could not do just what it did do in the case at bar. And in case of serious doubt, such as at least exists in the case at bar, we should not, we think, usurp the function of the legislature, but await its action before declaring that the method, terms, and conditions adopted here were unlawful.

That the matter before us is a matter for the legislature rather than the court is clearly borne out by Town of Remington v. Wood County, supra. In that case it was held that as to when the county should sell the land is a matter for the legislature and not for the court. In the case at bar part of the reason assigned by appellant why the minerals should not be reserved is that the county should sell the land so that it could be put on the tax rolls. Aside from that if the time of sale is a matter for the legislature, the manner and method of the sale must be also. The principle involved is the same. In Town of Remington v. Wood County, 238 Wis. 172, 298 N.W. 591, 595, the court stated:

"It (the statute) does not charge the county with a duty to sell. That is left to the discretion of the county. Its discretion is a legislative not a legal discretion which can be controlled by the Court. To hold that the statute requires the county to sell under any particular circumstance is to amend the statute,—to exercise legislative power which a court may not do.

"However persuasive the argument made by plaintiff may be to the effect that good public policy requires that the county be obliged to make sale of the lands and account to the town, that argument presents a question for the legislature and not for the courts. * * * If the county board in the exercise of the discretion vested in it by the legislature abuses its discretion, that presents a matter not for the court but for the legislature which so far has placed no limitations upon the exercise by the county of the power conferred upon it."

Even assuming that express statutory permission must exist to reserve mineral rights as was done in the case at bar, it is by no means clear that no such statutory authority exists. In Caldwell v. Kemper, 159 Fla. 231, 31 So2d 555, 557, trustees of an improvement fund were authorized to dispose of lands under such rules and regulations as may be adopted from time to time. It was held that the trustees under this power had the right to reserve mineral rights. The court stated:

"Aside from these provisions, we think that part of the quoted section of Chapter 18296, Murphy Act, authorizing the Trustees of the Internal Improvement Fund to sell the lands referred to therein under 'such rules and regulations as * * * may be fixed and adopted from time to time' by them affords ample authority for reserving oil and mineral rights in such deeds of sale. The State's title had ripened into a fee simple and there being no prohibition to the contrary, the additional powers vested in the Trustees of the Internal Improvement Fund certainly authorized them to impose such reservations as an individual could impose under like circumstances. We think the latitude given the Trustees of the Internal Improvement Fund in handling and disposing of these lands forces this conclusion.

"It follows that the reservations of oil and mineral rights in the deed executed by the Trustees of the Internal Improvement Fund to H. A. McQuagge was good and binding and may be enforced * * *."

Section 26-301, W.C.S. 1945, provides that each county shall have the following powers:

"3. To sell or convey any real or personal estate owned by the county, and make such order respecting the same as may be deemed conducive to the interests of the inhabitants;

'4. To make all contracts and do all other acts in relation to the property and concerns of the county necessary to the exercise of its corporate or administrative powers."

It would seem that these provisions are just as broad in scope as the provisions contained in Caldwell v. Kemper, supra, and in the absence of some contrary direction in the statute, would seem to apply to property acquired by tax sale. But see Blackford v. Judith Basin County, 109 Mont. 578, 98 P.2d 872, 126 A.L.R. 639.

It follows accordingly that the plaintiff did not acquire any mineral rights in and under the lots which he purchased from the county.

## II.

Counsel for plaintiff argue at great length that the trial court erred in holding that the Sohio Petroleum Company owns the mineral rights in lots 5 and 6 in controversy, under a lease from the Butler Corporation, and claim that the tax title to the county carried the mineral rights with it. They cite Polk County v. Basham, 234 Iowa 225, 12 N.W.2d 157; Jenkins v. Frederick, Okl., 257 P.2d 1058; McCracken v. Hummel, 43 Cal.App.2d 302, 110 P.2d 700; Annotation, 75 A.L.R. 435. Counsel believe that Ohio Oil Co. v. Wyoming Agency, 63 Wyo. 187, 179 P.2d 773, and Milliron Oil Co. v. Connaghan, Wyo., 302 P.2d 256, are not controlling herein. The point is not involved here. As we have seen, the plaintiff acquired no title to the mineral rights from the county, and hence is wholly without any source of title thereto. If the tax deeds to the county in fact carried the mineral rights along with them, these rights still would belong to the county, not to the plaintiff, but, since the county has not appealed

herein, the judgment of the trial court is binding upon it. It may not be without interest to mention the fact that the text in 85 C.J.S. § 900, pp. 311, 312, citing quite a number of cases, adopts the statement in Ohio Oil Co. v. Wyoming Agency, supra, saying as follows: "Conversely, a tax sale of land will not carry the mineral rights where there has been a severance, especially where such mineral rights were neither assessed nor sold for taxes, even though there was a failure to assess the rights separately as required by law, since, under such circumstances, the title of the surface owner against whom the sale proceedings have been made may pass by the sale of the land for taxes, although the mineral rights remain unaffected.

See also Bodcaw Lumber Co. of Louisiana v. Cox, 159 La. 810, 106 So. 313.

The judgment of the trial court is accordingly affirmed.