HELENA GUN CLUB, a Montana Corporation, Plaintiff
and Appellant, v. LEWIS AND CLARK COUNTY, a Poli-
tical Subdivision of the State of Montana, Defendant and
Respondent.

No. 10490
Submitted January 15, 1963. Decided March 4, 1963.
379 P.2d 436.

Keller, Magnuson & Reynolds, Helena, Paul T. Keller (argued), Helena, for appellant.

Hanrahan & Crowley, Helena, William F. Crowley (argued), Helena, for respondent.

MR. JUSTICE CASTLES delivered the Opinion of the Court.

This is an appeal from a judgment for defendant county entered pursuant to an order granting defendant county's motion for summary judgment and denying plaintiff's motion for summary judgment.

Plaintiff, appellant here, brought the action for a declaratory judgment to have declared the effect, if any, of a reservation in a deed wherein plaintiff is the grantee and the defendant county, respondent here, is the grantor.

Plaintiff's complaint alleges the execution and delivery of the deed to plaintiff on December 27, 1948. The deed, a copy of which is attached and made a part of the complaint, contains the following reservation:

"RESERVING unto the said party of the first part, its suc-

cessors and assigns, the right to take materials consisting of rock, gravel, sand and earth from any portion of the land above described, together with the right to operate necessary equipment thereon and the right of ingress and egress for the purpose of removing said materials therefrom.''

Plaintiff alleges that a great deal of uncertainty exists as to the meaning of the reservation and as to whether or not there is any authority in the defendant county to make such a reservation in a deed to property, which some time prior to 1948, defendant acquired by tax deed.

Plaintiff alleges that the defendant county had no right or legal authority to make the reservation because it was a mere holder of the tax title property for the purpose of disposing of the same to get it back on the tax rolls and to collect and distribute the taxes due various state agencies.

In its answer the defendant county admits the execution and delivery of the deed and how and when defendant obtained the property. The defendant county admits that a great deal of uncertainty exists as to the meaning of the reservation and as to whether or not there is any authority in the defendant county to make such a reservation in a deed of the property in question.

Defendant county denies that it did not have the right and authority to make the reservation. As separate defenses the defendant county plead failure by plaintiff to state a claim against defendant upon which relief can be granted, statutes of limitations, laches, and unjust enrichment upon the part of plaintiff as the consideration paid by plaintiff did not include consideration for the reserved interests.

After the defendant county answered, plaintiff moved for summary judgment. Then defendant moved for summary judgment. Neither party, by deposition or otherwise, presented any facts in addition to those established by the pleadings. Defendant's motion was granted, plaintiff's motion was de-

nied, and judgment was entered for defendant. Plaintiff appealed.

■ The sole question presented by plaintiff's seven specifications of error is whether or not the defendant county had the power to reserve the right to take sand, gravel, rock and earth in a deed to land conveyed to plaintiff when the defendant county had acquired the land by tax deed.

We hold that the defendant county had implied power to make the reservation in question.

■ A county, being an involuntary corporation for governmental purposes, has only such powers as the law prescribes or as arise by necessary implication therefrom. Hersey v. Neilson, 47 Mont. 132, 131 P. 30; R.C.M.1947, § 16-801. Among the powers granted to a county, as enumerated in R.C.M.1947, § 16-804, are the powers to purchase and hold lands within its limits and to make such orders for the disposition or use of its property as the interests of its inhabitants require. A county may acquire property by taxation in the modes authorized by law. R.C.M.1947, § 67-103. County commissioners have power to lay out, maintain, control, and manage public highways within a county. R.C.M.1947, § 16-1004.

■ In addition to the general powers and grants of authority, the county commissioners have specific power to build and maintain highways, R.C.M.1947, § 32-302 (3), and to do whatever may be necessary for the best interests of the roads and road districts within a county. R.C.M.1947, § 32-302(8).

Considering all of the foregoing powers, and the fact that the reservation in the instant case was made for the acquisition of road-building materials, that being within a specific power, there is an implied power to make the reservation in question.

■ In State ex rel. Barnhart v. Cranston, 113 Mont. 61, 67, 120 P.2d 828, 830, in considering the question of whether or not county commissioners have the power to waive a for-

feiture provision in a contract for the sale of tax title lands
by the county, this court had this to say:

"In selling the lands, the county acts in its proprietary, as
distinguished from its governmental, functions. *The board has
such implied powers as are usually exercised by the private seller
of property.* The rule is universal that a private owner may
waive the forfeiture provisions in a contract after a forfeiture
has been declared, so long as no rights of third persons have
intervened. 66 C.J. 787; 17 C.J.S., Contracts, § 409, p. 897;
66 C.J. 767; and see Federal Surety Co. v. Basin Construction
Co., 91 Mont. 114, 115, 5 P.2d 775.'' (Emphasis added.)

In Probasco, Sr. v. Sikes, 77 Wyo. 108, 121, 307 P.2d 817,
821, the County of Albany, Wyoming, after bidding for cer-
tain lands at a tax sale, received a certificate of purchase for
the land. Pursuant to statute, four years after the certificate
had been issued, the county treasurer issued a tax deed of
the land to the county. Subsequently the county board sold
the land to plaintiff, Probasco, reserving to itself a part of
the mineral rights. Two years later Probasco brought an action
to quiet his title to the minerals. Probasco contended that
when he received the deed from the Board of County Com-
missioners, he received the right to all the property and that
the county had no right to reserve the minerals. After recog-
nizing the general rule that public officers have only such
power and authority as is clearly conferred by law or neces-
sarily implied therefrom with the mandate that such power
shall be exercised for the public good, the court stated:

"Bearing these rules in mind, can this court say that the
broad power expressly granted to the county was not exer-
cised efficiently for the public good? We hardly think so.
A private party who has absolute title to a piece of property
may sell it in such manner as he deems best. He may divide
the property and sell such portions as to him seem proper;
he may sell it by dividing it vertically or horizontally. What

a private party may do is not an unfair criterion of what a county may do, in the absence of legislation to the contrary.''

In the absence of a duty to sell tax deed lands, and of any express statutory permission to reserve mineral rights, and upon consideration of broad powers in the county to sell real estate and make all contracts to do all other acts in relation to property of the county necessary to the exercise of its corporate and administrative powers, the court held that the county had an implied power to make the mineral reservation.

Thus, in the Probasco case, supra, in the absence of any express statutory power to reserve minerals, the court held that, from the broad power to sell real estate and make such orders respecting the same as may be deemed conducive to the interests of the inhabitants, the county had an implied power to make mineral reservations in deeds to tax title lands sold by it.

R.C.M.1947, § 84-4191, gives county commissioners the power to reserve a six and one-fourth percent royalty interest in minerals from tax title lands. However, in the present case apparently there is a lack of a specific power to reserve sand and gravel. But, as we have heretofore stated, there is an implied power to so reserve. In this regard, insofar as it applies to the implication of a power to reserve, we adopt the rationale of the Probasco case, supra.

Plaintiff argues that the defendant county holds land taken by it for delinquent taxes merely for the purpose of resale and has only the power to deal with such land as is provided by the statutes dealing with the county's acquisition and disposal of land for taxes. Plaintiff contends that, expressed in the statutes, is an intention of the legislature that the land taken by a county for delinquent taxes is to be restored to the tax rolls so as to benefit the various taxing units, and that the county should not become a landowner through its tax collection laws. Undoubtedly, that may be true, but that does not answer the question involved in the present case. The

provisions, especially R.C.M.1947, § 84-4190, do not impose an absolute duty upon a board of county commissioners to sell all of the land regardless of the circumstances.

Without a doubt the defendant county could have acquired the reserved interests by purchase. To hold that the county could not reserve the sand and gravel would require a county similarly situated to sell land containing sand and gravel, to which it already has title under a tax deed, and then repurchase it from the buyer. Such a holding would necessitate many circuitous acts which would, in the long run not be in the best interests of a county's inhabitants. Moreover, the utilization of the reserved interests can inure directly to the benefit of all inhabitants of the county and the state, and, indirectly, to the benefit of the various taxing agencies.

To this court it seems very peculiar that the plaintiff, at the time of its purchase, took the deed with full knowledge that it contained the reservation, and now, approximately thirteen years later, attacks the reservation upon the grounds that the defendant county had no authority to make it.

We cannot find, nor have we been shown in any of our statutes, an intention of the legislature which would inhibit any power, express or implied, of a county to hold and use tax title lands, or any part thereof, in any manner, such as the reservation of sand and gravel in the instant case, for the best interests of its inhabitants.

If we were to accept plaintiff's theory, a county would be unable to make any disposition or even use of such property other than to sell the whole. This theory would prohibit even the granting of an easement. R.C.M.1947, § 84-4155, provides for piece-meal redemption of land sold for taxes. Also, we believe that considering the afore-mentioned powers, the county has the necessary implied power to make reservations for public use.

We do not hold that, from the broad power to acquire, hold, and sell realty, a county has an implied power to deal with

tax acquired lands as it sees fit. Rather, we base our decision upon a power to reserve sand and gravel from a sale of tax acquired lands, implied from the above-mentioned broad power and the power to lay out, build, and maintain county roads, it being conceded by the parties in the briefs and during oral argument that the sand and gravel is for county road building and maintenance.

Because our holding on the issue of the county's power will dispose of this matter, it is unnecessary for us to discuss the issues of laches, limitations, unjust enrichment, or whether or not sand and gravel is a mineral under a curative statute.

We shall comment briefly on the dissenting opinion. There it is said that this opinion will result in a lowering of prices paid for tax deed land. In the instant case, the price paid was $1.00 per acre, $40 for the entire tract which is indicative of the fact that plaintiff's purchase price was minimal by reason of the reservation.

Since, as a matter of law, the county had the power to take the reservation in question, the district court was correct in granting summary judgment for the defendant county. The judgment is affirmed.

MR. CHIEF JUSTICE JAMES T. HARRISON, and MR. JUSTICE DOYLE, concur.

MR. JUSTICE JOHN C. HARRISON did not participate.

HONORABLE DISTRICT JUDGE NAT ALLEN, sitting in place of MR. JUSTICE ADAIR, dissenting:

I dissent.

The sole basis of the majority opinion in this case rests on an implied power to make a reservation of rock, gravel, sand, and earth by the county in selling its tax deed land. It seems to the writer that this doctrine of implied power should only be used after the *necessity* is shown, and the court be strict in requiring the county to show necessity. The leading case on

this doctrine is Hersey v. Neilson, 47 Mont. 132, 131 P. 30, where it is said it is a well-established law that a county is an involuntary corporation for governmental purposes, and is in no sense a business corporation; that the powers and obligations of the county are such only as the law prescribes or as arise by *necessary* implication therefrom. And again, in Independent Publishing Co. v. Lewis and Clark County, 30 Mont. 83, 75 P. 860, it is quasi corporate in character but has only such powers as are expressly provided by law or are *necessarily* implied by those expressed. There is no necessity for Lewis and Clark County to own this particular gravel pit, together with all the rock, gravel, sand, and earth that might be on the forty-acre tract sold, and therefore there can be no implied power on the county's part to reserve this. Further the reservation, which includes earth, sand, gravel, and rock, would seem to the writer to include everything that is sold. After all, if you have a right to remove all of that, what is left except the air?

The Legislature has seen fit to grant by express statement in section 84-4191, R.C.M.1947, the rights of the county to make reservations, and that includes *only* a "six and one-fourth per-cent interest in the oil, gas, other hydrocarbons and minerals produced and saved from said land" and if the Legislature wants to go further than this, that is their privilege, but until they do I don't think this court should take it upon itself to enlarge the statutory powers of the county to reserve. If it does the fertile minds of county commissioners and county attorneys will produce no end of reservations that they can think of. A few come to the writer's mind such as: (1) easements for right of way for road purposes; (2) rock, gravel, sand, and earth, as they have done here; (3) all the oil under a piece of land (since oil can be said to be necessary to road building); (4) all timber (since wood can be said to be necessary to building bridges); (5) easements for ditches to drain roads (since these can be said to be a necessity in the road-building program; and ad infinitum.

The majority decision in this case will require a decision on all the rest of the reservations which will come in the future which I have mentioned, and doubtless many more, and no reservation is really necessary to road-building.

The purchaser of tax deed land is entitled to know what he gets, and I do not think the Rod and Gun Club in this case knows what it has since all of this earth is removable by the county at any time, as well as the sand and gravel underneath, and this situation prevailing throughout the State of Montana is bound to lower the price of tax deed lands to the counties, as well as add confusion among attorneys trying to decide whether or not the myriad reservations to come will be thought by this court to come under the doctrine of implied powers because they are all "necessary."