CHARLES P. SMITH, PLAINTIFF AND RESPONDENT, *v.* COUNTY OF MUSSELSHELL, MONTANA, A BODY CORPORATE AND POLITIC OF THE STATE OF MONTANA, DEFENDANT AND APPELLANT.

No. 11736.
Decided July 22, 1970.
472 P.2d 878.

Anderson, Symmes, Forbes Peete & Brown, Billings, Ben N. Forbes, argued, Billings, for defendant and appellant.

Crowley, Kilbourne, Haughey, Hanson & Gallagher, Billings, Norman Hanson, argued, Billings, for plaintiff and respondent.

MR. CHIEF JUSTICE JAMES T. HARRISON delivered the Opinion of the Court.

From a summary judgment for the plaintiff entered in the district court of Musselshell County, defendant appealed.

Charles P. Smith (hereafter referred to as plaintiff), successor in title to land of A. J. Ziesmer, brought this suit to determine his interest in land located in Musselshell County and interests reserved by the original vendor, Musselshell County (hereafter referred to as the county). The district court rendered a summary judgment based on a 1945 quiet title decree which it found to be res judicata of all issues in the present suit.

From the record it appears that on June 4, 1941 the county sold approximately 672 acres of land to A. J. Ziesmer under a contract which provided: "Vendor reserves an undivided 6¼% of all oil, gas and other minerals lying in, under and beneath the premises hereinbefore described." The county gave a deed for this land to A. J. Ziesmer, dated April 5, 1944, which contained a reservation for the county of, "an undivided 6% royalty of all oil, gas, and other minerals lying in, and that may be produced from the premises herebefore described, delivered free of cost to first party." One

year later, A. J. Ziesmer brought an action to settle various interests in this land naming the county as one of several defendants, and on April 2, 1945, a district court decree quieted title in the land with this reservation: "Subject to a reservation in and to Musselshell County, Montana, of 6¼% of all oil, gas, and other minerals lying in and that may be produced from the said premises."

The county urges as controlling in this cause a 1941 Montana statute which authorized county commissioners to convey county land and provides: "* * * the county may reserve not to exceed six and one-fourth per cent (6¼%) royalty interest in the oil, gas, and minerals produced and saved from said land." Sec. 2, Ch. 171, Session Laws 1941, (now section 84-4191, R.C.M.1947). The effect of this statute, the county contends, is to limit a county's reservation strictly to a royalty interest and to completely exclude by statute any reservation of a mineral interest.

The issues on this appeal are: (1) Whether or not the 1945 quiet title decree is res judicata regarding the interests of the county and the plaintiff; (2) If it is res judicata, does its interpretation allow the county a royalty interest or a mineral interest.

As to the first issue, four criteria exist in Montana law which must be met before a plea of res judicata can be sustained. These criteria are: (1) the parties or their privies must be the same; (2) the subject-matter of the action must be the same; (3) the issues must be the same, and must relate to the same subject-matter; and (4) the capacities of the persons must be the same in reference to the subject-matter and to the issues between them. State ex rel. Sullivan v. School Dist. No. 1, 100 Mont. 468, 50 P.2d 252; Brannon v. Lewis & Clark Cty., 143 Mont. 200, 387 P.2d 706. In the present action, plaintiff is the successor in title to land of A. J. Ziesmer, hence is in privy with all of A. J. Ziesmer's former interests. The county was a party to the quiet title

action brought by A. J. Ziesmer in 1945 which concerned the exact land and reservation in issue in this suit. Therefore, the first three criteria are met. The fourth criterion is also met, because neither party is asserting any right on appeal which was not available to them or their predecessors in title in the 1945 quiet title action. As a result, the district court correctly found the decree of April 2, 1945 to be a conclusive statement and res judicata of particular issues presented on appeal regarding the respective parties' interests. The rule was succinctly reiterated by the United States District Court in a similar case on issues found to be res judicata by a former decree to quiet title in these words: "A prior judgment is conclusive upon the issues made or tendered, and as far as those issues are concerned, *the judgment is conclusive of everything that might have been urged for or against them.*" Mondakota Gas Company v. Reed, 244 F.Supp. 327, 330 (D.Mont.1965).

Turning to the second issue, since the decree of April 2, 1945 is a final expression of the county's reservation, it is the only document that can be inspected to determine the specific interest reserved. The decree describes the reservation as "6% of all oil, gas, and other minerals lying in and that may be produced from the said premises." Does this connote a royalty or a mineral interest?

This Court has distinguished a royalty and a mineral interest in the following manner: "Since 'royalty' and 'nonparticipating royalty' are shares in production only, certain words denoting a share in production have been used to delimit the interest conveyed. Likewise a mineral interest being a severing of the mineral fee is often described in terms of ownership under the ground. Thus, 'produced and saved' have been associated with royalties, 'oil and gas in and under and upon' the land, have been associated with a mineral interest." Stokes v. Tutvet, 134 Mont. 250, 259, 328 P.2d 1096, 1101. The words 'royalty", "nonparticipating royalty", and

"mineral interest" are not contained in the decree, so the only interpretive resort left is to examine words denoting a share in production or ownership underground. With regard to this, the important words found in the decree are "oil, gas, and other minerals lying in" which are similar but not exactly like the standard words "oil and gas in and under and upon" describing a mineral interest, and "produced from" which is only half of the standard phrase "produced and saved" describing a royalty interest. Thus, these words alone are not positively determinative of either a mineral interest or a royalty interest.

A more definitive answer on this point arises from the parent case in Montana in which a deed stated: "Reserving unto the said parties of the first part a 12½% interest and royalty in and to all oil and gas and other minerals of whatsoever nature, found in or located upon or under said land or premises above described, or that may be produced therefrom.'" Marias River Syndicate v. Big West Oil Co., 98 Mont. 254, 260-261, 38 P.2d 599, 600. The interest in the deed was found to be a mineral interest. With this language as a positive guide, a royalty interest in the present case cannot be sustained.

Irregardless of the presence of the word "royalty" in the Marias case, this Court extracted a mineral interest from language used therein, because there was no express provision in the deed for a royalty payment, "free and clear of the cost of its discovery and production" and no "express obligation on the part of any person to discover and produce oil or gas." Marias River Syndicate v. Big West Oil Co., supra, at 265, 38 P.2d at 601. In the instant case, the decree does not even mention the word "royalty" nor is there any reference to a payment "free and clear of the cost of discovery and production" or an "express obligation on the part of any person to discover and produce oil or gas." Words in the decree "lying in" and "produced from" can be considered

synonymous with words in the Marias case "found in" and "produced therefrom". Thus, the judicious conclusion drawn from the principles stated is that the interest established by the decree in this case is a mineral interest. It has been a rule of this Court to strictly adhere to principles enunciated in the Marias case in light of approximately thirty-six years that have passed since it was promulgated during which many conveyances have undoubtedly been executed relying on provisions of a mineral grant based on the Marias case.

Sec. 2, Ch. 171, Session Laws 1941 (now section 84-4191, R.C.M.1947) that the county deems controlling is substantively unchanged and has been interpreted by this Court as not prohibiting a reservation of a mineral interest by a county. In Helena Gun Club v. Lewis & Clark Cty., 141 Mont. 490, 379 P.2d 436, this Court followed the rationale of a Wyoming case, Probasco, Sr. v. Sikes, 77 Wyo. 108, 307 P.2d 817, and we said at page 495, 379 P.2d at page 438 of our opinion:

"Thus, in the Probasco case, * * * in the absence of any express statutory power to reserve minerals, the court held that, from the broad power to sell real estate and make such orders respecting the same as may be deemed conducive to the interests of the inhabitants, the county had an implied power to make mineral reservations in deeds to tax title lands sold by it.

"R.C.M.1947, § 84-4191, gives county commissioners the power to reserve a six and one-fourth percent royalty interest in minerals from tax title lands. However, in the present case apparently there is a lack of a specific power to reserve sand and gravel. But, as we have heretofore stated, there is an implied power to so reserve. In this regard, insofar as it applies to the implication of a power to reserve, we adopt the rationale of the Probasco case * * *".

We extend this interpretation to Sec. 2, Ch. 171, Session Laws 1941 (now section 84-4191, R.C.M.1947). While this statute omits any express power to reserve minerals, the reservation of a mineral interest can be expected to inure directly to the benefit of the inhabitants of the county through a leasing of mineral rights. Therefore, this Court does not find the statutes of Montana prohibitive of an implied power in the county to reserve a mineral interest when conveying land.

Judgment affirmed.

MR. JUSTICES CASTLES, JOHN C. HARRISON and HASWELL, concur.